[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Obetz v. McClain*, Slip Opinion No. 2021-Ohio-1706.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2021-OHIO-1706

THE VILLAGE OF OBETZ, APPELLANT, *v*. MCCLAIN, TAX COMMR., ET AL.,
APPELLEES.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Obetz v. McClain*, Slip Opinion No. 2021-Ohio-1706.]**

*Taxation—R.C. 5709.40(G)—Tax-increment-financing ("TIF") exemption may commence no earlier than the tax year following the effective date of the ordinance creating the TIF arrangement—Decision of Board of Tax Appeals affirmed.*

(No. 2020-0541—Submitted January 12, 2021—Decided May 20, 2021.)

APPEAL from the Board of Tax Appeals, No. 2018-1008.

_____

KENNEDY, J.

{¶ 1} This appeal as of right from a decision of the Board of Tax Appeals presents the question whether a municipality may reinstate the tax-exempt status of real property under a tax-increment-financing ("TIF") arrangement by amending

the ordinance that originally authorized the TIF arrangement after the exemption has expired.

{¶ 2} R.C. 5709.40(G) provides that a TIF exemption may commence no earlier than the tax year following the effective date of the ordinance creating the TIF arrangement. Although appellant, the village of Obetz, enacted an ordinance in 2017 in an effort to reinstate the exemption after it expired in 2014, the exemption could not retroactively apply to tax years 2015, 2016, and 2017. Rather, pursuant to R.C. 5709.40(G), 2018 was the first tax year that the exemption could commence.

{¶ 3} Because the 2017 ordinance created a new exemption rather than extending the prior one, the BTA reasonably and lawfully upheld appellee tax commissioner's denial of an exemption for tax years 2015, 2016, and 2017.

{¶ 4} We therefore affirm the decision of the BTA.

**Facts and Procedural History**

{¶ 5} On April 7, 1997, Obetz passed Ordinance 6-97 to enact a TIF arrangement related to the development of an approximately 643,000 square-foot warehouse on property owned by Goodyear Tire & Rubber Company. The ordinance stated "that the increase in true value of the Property subsequent to the effective date of this Ordinance * * * is a public purpose for 16 years, and 25% of the [property's increased value] is hereby declared to be exempt from taxation [for 16 years]." It approved the TIF agreement with Goodyear, which required the company to deposit semiannual service payments into a TIF fund in lieu of taxes. An exhibit to the ordinance describes the public-improvement projects to be financed with the TIF fund.

{¶ 6} On October 13, 1999, the tax commissioner granted the tax exemption relating to the Goodyear TIF, finding the increased value of the property to be "legally exempt from taxation pursuant to R.C. section 5709.40 in accordance with

2

the provisions of the municipal ordinance." In granting the exemption, the commissioner ordered that

> 100% of the [increased value] of the real property described above be entered upon the list of property in said county which is exempt from taxation commencing in the first year in which the real property would first be taxable were that property not exempted from taxation, and ending on the earlier of thirty years from such date of passage or the date on which the City can no longer require semiannual service payments in lieu of taxes.

{¶ 7} The tax commissioner granted a 100 percent exemption for increased property value while the ordinance provided for only 25 percent of the newly accrued value to be exempt. Further, the tax commissioner provided for the exemption to continue for the shorter of 30 years or the end of the obligation to make service payments, while the ordinance stated that the exemption would last for 16 years.

{¶ 8} In June 2017, an attorney for Obetz, Eugene Hollins, e-mailed the Franklin County auditor's office concerning the expiration of the exemption provided in the Goodyear TIF. Rebecca Wirthman, a deputy auditor, replied that the county auditor had erroneously determined the exemption to have a 30-year duration and stated that the exemption "should have actually ended for tax year 2015." Wirthman noted that payments had been erroneously deposited into the Goodyear TIF account since the beginning of tax year 2015 and that the state department of taxation had directed that the property be returned to the taxable list for 2015, 2016, and 2017. Wirthman also relayed to Hollins the tax department's suggestion that "if [Obetz] pass[es] an ordinance, before the end of [2017], * * * they should be able to re-TIF those parcels for 2015-2017."

{¶ 9} On December 28, 2017, Obetz enacted Ordinance 64-17 to amend the 1997 ordinance, seeking to extend the TIF exemption from 16 to 30 years, to increase the exemption from 25 percent to 100 percent of the increased value, and to expand the list of public-infrastructure projects to which TIF service payments would be applied. It also varied from the 1997 ordinance by providing for Obetz to pay appellee Hamilton Local School Board of Education 60 percent of the "net TIF funds" plus an advance payment of $200,000.

{¶ 10} After passing the 2017 ordinance, Obetz applied for a tax-incentive-program exemption. In May 2018, the tax commissioner issued a final determination denying Obetz's application. The commissioner acknowledged the discrepancies between the 1999 entry granting the exemption and the 1997 ordinance, but he noted that the entry made the exemption "subject to the limitations of the underlying ordinance," so that "the TIF exemption expired in 2014 with the exempt value of the property to be returned to the tax list in 2015."

{¶ 11} The commissioner explained that the 2017 ordinance could not retroactively reinstate the exemption for tax years 2015, 2016, and 2017, because R.C. 5709.40(G) provides that an exemption may begin no earlier than a tax year that "commences after the effective date of the ordinance." The commissioner reasoned that because the 2017 ordinance became effective upon enactment in late 2017, 2018 was the first tax year the exemption could commence. And because the 1997 ordinance's exemption had expired in 2014, the amendment of that ordinance related to a new exemption that could not retroactively restore the property to the exempt list for the three lapsed years. Therefore, the commissioner concluded, the auditor had "properly returned the property to the tax list for tax years 2015, 2016, and 2017."

{¶ 12} Obetz appealed to the BTA, which affirmed the commissioner's final determination. BTA No. 2018-1008, 2020 WL 1657890 (Mar. 22, 2020). It agreed with the commissioner that the 2017 ordinance created a new exemption

rather than extending the earlier one, so that R.C. 5709.40(G) barred the exemption from applying to 2015, 2016, and 2017. *Id*. at *3. The BTA also rejected Obetz's argument that the commissioner was estopped from claiming that the original exemption had expired. *Id*.

{¶ 13} Obetz appeals and advances three propositions of law:

1. A Final Determination of the Tax Commissioner cannot be overridden or subsequently revised if it is not appealed within the statutorily prescribed window.

2. Land classified as tax exempt according to the express terms of an unchallenged Final Determination of the Tax Commissioner cannot be retroactively placed on the tax rolls by either the Tax Commissioner or a county official because the tax exempt status of land is determined as of January 1 of the tax year at issue.

3. The terms of an unchallenged twenty-year old Final Determination of the Tax Commissioner and the written direction of a known representative of a public office are sufficient to establish reasonable reliance on behalf of a municipality such that estoppel may be applied against the State.

**Law and Analysis**

*Standard of Review*

{¶ 14} We review BTA decisions to "determine whether they are reasonable and lawful." *Grace Cathedral, Inc. v. Testa*, 143 Ohio St.3d 212, 2015-Ohio-2067, 36 N.E.3d 136, ¶ 16, citing R.C. 5717.04. Although we defer to the "BTA's determination of the credibility of witnesses and its weighing of the evidence subject only to an abuse-of-discretion review on appeal," *HealthSouth*

*Corp. v. Testa*, 132 Ohio St.3d 55, 2012-Ohio-1871, 969 N.E.2d 232, ¶ 10, we do not defer to the BTA's resolution of legal questions but rather apply de novo review, *Crown Communication, Inc. v. Testa*, 136 Ohio St.3d 209, 2013-Ohio-3126, 992 N.E.2d 1135, ¶ 16.

{¶ 15} R.C. 5715.271 provides that "[i]n any consideration concerning the exemption from taxation of any property, the burden of proof shall be placed on the property owner to show that the property is entitled to exemption." Although Obetz is neither the owner of the property at issue nor the taxpayer, it is the applicant for, and proponent of, the exemption. It therefore bears the burden to show that the property is entitled to an exemption from real-property taxes. *Anderson/Maltbie Partnership v. Levin*, 127 Ohio St.3d 178, 2010-Ohio-4904, 937 N.E.2d 547, ¶ 16. R.C. 5715.271 further provides that the "fact that property has previously been granted an exemption is not evidence that it is entitled to continued exemption."

*Tax-Increment Financing*

{¶ 16} Tax-increment financing "is a method of promoting and financing the development of real property by directing ' ''all or a portion of the increased property tax revenue that may result'' ' from the development to defraying the cost of improvements that are part of the development." *Kohl's Illinois, Inc. v. Marion Cty. Bd. of Revision*, 140 Ohio St.3d 522, 2014-Ohio-4353, 20 N.E.3d 711, ¶ 3, quoting *Princeton City School Dist. Bd. of Edn. v. Zaino*, 94 Ohio St.3d 66, 68, 760 N.E.2d 375 (2002), quoting Meck & Pearlman, *Ohio Planning and Zoning Law*, Section T 15.29, at 704 (2000).

{¶ 17} "Once a TIF agreement is in place, any increase in the assessed value of the designated parcels is subject, in whole or in part, to (1) an exemption from taxation and (2) a concomitant obligation of the property owner to make payments 'in lieu of tax' into a special fund used to pay for the development—such payments are referred to as 'service payments.' " *Fairfield Twp. Bd. of Trustees v. Testa*, 153 Ohio St.3d 255, 2018-Ohio-2381, 104 N.E.3d 749, ¶ 5, quoting R.C. 5709.73(B)

and 5709.74. The service payments "cover the cost of public improvements in the incentive district, such as roads, water and sewer lines, or environmental remediation." *Sugarcreek Twp. v. Centerville*, 133 Ohio St.3d 467, 2012-Ohio-4649, 979 N.E.2d 261, ¶ 7.

{¶ 18} In its first proposition of law, Obetz contends that the 2017 amendment would permit an extension of the original exemption under the 1997 ordinance from 16 to 30 years because the tax commissioner's 1999 entry had authorized a maximum 30-year exemption. The tax commissioner responds that Obetz failed to raise this argument in its notice of appeal to the BTA, so that both the BTA and this court lack jurisdiction to entertain Obetz's first proposition of law. We disagree.

{¶ 19} Prior to its amendment in 2013, former R.C. 5717.02(B) required a taxpayer seeking to appeal the final determination of the tax commissioner to "specify the errors * * * complained of" in the notice of appeal to the BTA. 2011 Sub.H.B. No. 225. Construing this requirement as it previously appeared in the General Code, this court held that the taxpayer's duty to specify the tax commissioner's errors is mandatory and a condition for perfecting an appeal. *E.g.*, *Am. Restaurant & Lunch Co. v. Glander*, 147 Ohio St. 147, 149-150, 70 N.E.2d 93 (1946). Then in *Queen City Valves v. Peck*, we held that "a notice of appeal which does not enumerate in definite and specific terms the precise errors claimed but uses language so broad and general that it might be employed in nearly any case is insufficient to meet the demands of the statute" and permits the BTA to dismiss the appeal for lack of jurisdiction. 161 Ohio St. 579, 120 N.E.2d 310 (1954), syllabus. Adhering to that precedent, we have explained that "[i]t is well settled that 'the BTA lacks jurisdiction to grant relief from a final determination based on * * * alleged errors that were not sufficiently specified in the notice of appeal.' " (Ellipsis added in *Testa*.) *Cuyahoga Cty. v. Testa*, 145 Ohio St.3d 157, 2016-Ohio-

134, 47 N.E.3d 814, ¶ 26 (considering the pre-2013 version of R.C. 5717.02), quoting *Brown v. Levin*, 119 Ohio St.3d 335, 2008-Ohio-4081, 894 N.E.2d 35, ¶ 17.

{¶ 20} However, in 2013, the General Assembly amended R.C. 5717.02, eliminating the requirement to "specify the errors" in the notice of appeal and replacing it with language requiring that "[a] notice of appeal shall contain a short and plain statement of the claimed errors in the determination * * * of the tax commissioner * * * showing that the appellant is entitled to relief and a demand for the relief to which the appellant claims to be entitled." 2013 Sub.H.B. No. 138.

{¶ 21} The General Assembly's use of different words signals a different meaning. *See Loughrin v. United States*, 573 U.S. 351, 357-358, 134 S.Ct. 2384, 189 L.Ed.2d 411 (2014); *Kiefer v. State*, 106 Ohio St. 285, 290, 139 N.E. 852 (1922). Further, we presume that the legislature is fully aware of our prior construction of a statute when amending it. *Riffle v. Physicians & Surgeons Ambulance Serv., Inc.*, 135 Ohio St.3d 357, 2013-Ohio-989, 986 N.E.2d 983, ¶ 19. By amending R.C. 5717.02 to eliminate the requirement to "specify the errors," then, the General Assembly has abrogated our precedent requiring a notice of appeal to set out the errors in definite and specific terms. With the amendment, the General Assembly eliminated a procedural pitfall requiring unwary taxpayers to provide a laundry list of errors and thereby helped to ensure that tax appeals are decided on their merits—not denied because of a technical defect.

{¶ 22} Obetz's notice of appeal to the BTA gave fair notice of the argument now asserted in the first proposition of law by contesting the commissioner's finding that the 2017 ordinance "creates a new tax increment financing (TIF) exemption rather than amending the TIF exemption created by the Village of Obetz" in the 1997 ordinance. It was not necessary for Obetz to mention the 1999 entry in its notice of appeal, because Obetz did not need to set forth a full legal argument or specific reasoning in the notice of appeal but rather had to provide only a short and plain statement of the claimed errors in the tax commissioner's

determination. We therefore reject the commissioner's contention that Obetz forfeited its main argument by not specifically referring to the 1999 entry in its notice of appeal to the BTA.

{¶ 23} In support of its first proposition of law, Obetz maintains that its 2017 ordinance extends the original exemption through 2015, 2016, 2017, and beyond by amending the exemption's term from 16 years to 30 years in accordance with the commissioner's 1999 entry. It asserts that because the 1999 entry was not appealed and its errors were not corrected, the 2017 amendment effectuates the full 30-year exemption granted by the 1999 entry. Obetz further contends that the commissioner, by denying Obetz's current exemption application, has unlawfully overruled his 1999 entry.

{¶ 24} However, the 1999 entry did not permit Obetz to retroactively reinstate the exemption after it had expired. First, the entry grants the tax exemption "in accordance with the provisions of the municipal ordinance," and the language of the 1997 ordinance provides for a 16-year exemption. Second, the entry terminates the exemption at the earlier of 30 years or the "date on which [Obetz] can no longer require semiannual service payments in lieu of taxes." Because the 1997 ordinance created a 16-year exemption from taxes on the increased value of the property, the ordinance required "service payments in lieu of [those] taxes" only as long as the exemption itself lasted, which was 16 years. Therefore, under the plain language of both the 1997 ordinance and the 1999 entry, the exemption expired after tax year 2014.

{¶ 25} Further, pursuant to R.C. 5709.40(G), an exemption can only take effect in a tax year that "commences after the effective date of the ordinance." As a result, R.C. 5709.40(G) barred Obetz's attempt to obtain an exemption for past years, since that provision limited any exemption under the 2017 ordinance to tax years following 2017. The tax commissioner and the BTA properly treated the 2017 ordinance as creating—and the exemption application filed pursuant to that

ordinance as seeking—a new exemption under R.C. 5709.40. We therefore reject the argument asserted in support of the first proposition of law.

*Retroactive Removal from the Exempt List*

**{¶ 26}** In its second proposition of law, Obetz argues that it was unlawful for the Franklin County auditor to retroactively remove the property from the exempt list at the tax commissioner's directive after having originally maintained it on the exempt list for 2015, 2016, and 2017.

**{¶ 27}** R.C. 5713.08(A) provides that "[n]o additions shall be made to [the county auditor's] exempt lists and no additional items of property shall be exempted from taxation without the consent of the tax commissioner." The statute continues:

> The commissioner may revise at any time the list in every county so that no property is improperly or illegally exempted from taxation. The auditor shall follow the orders of the commissioner given under this section.

**{¶ 28}** This statute authorized the commissioner to direct the auditor to return the property to the taxable list in mid-2017. The plain terms of R.C. 5713.08(A) permit the commissioner to "revise *at any time* the list in every county so that no property is improperly or illegally exempted from taxation," whereby "[t]he auditor shall follow the orders of the commissioner given under this section." (Emphasis added.) The statute authorizes the removal of property from the exempt list after the lien date of the tax year, to the extent that the owner is no longer legally entitled to the exemption. We therefore reject Obetz's argument under its second proposition of law.

*Estoppel*

**{¶ 29}** In support of its third proposition of law, Obetz argues that the tax commissioner is estopped from denying the extension of the TIF exemption. But

although the BTA addressed the estoppel claim on the merits, the commissioner asserts that Obetz forfeited this argument by failing to include it as a statement of error in its notice of appeal to the BTA.

{¶ 30} As already discussed, R.C. 5717.02(C) requires a "short and plain statement of the claimed errors" in the notice of appeal. Here, the notice of appeal to the BTA provided a short and plain statement of the village's claimed errors that challenged the tax commissioner's findings that the property is not exempt, that the village had created a new TIF exemption rather than amending the prior one, and that the subject parcels were properly returned to the tax list. Obetz did not have to further specify the reasoning, argument, or authority supporting the errors asserted in its notice of appeal of the tax commissioner's findings.

{¶ 31} We therefore review the merits of the village's argument that the tax commissioner is estopped from denying the village the claimed exemption. That argument, however, is unavailing for the following reasons.

{¶ 32} Obetz points to our decision in *Crown* for the proposition that estoppel applies when "the tax commissioner had in writing committed himself over an extended period to a particular construction of tax law as applied to the taxpayer," 136 Ohio St.3d 209, 2013-Ohio-3126, 992 N.E.2d 1135, at ¶ 21. In *Crown*, this court noted that it had applied "a kind of estoppel" "in a very limited context" when the tax commissioner "change[d] position and then retroactively assess[ed] tax on transactions that had previously been found by the commissioner to be exempt." *Id.*

{¶ 33} That is not the case here. The 1999 journal entry granting the TIF exemption stated that the exemption ended "on the earlier of thirty years from such date of passage or the date on which the City can no longer require semiannual service payments in lieu of taxes," and the village's 1997 ordinance expressly provided that the exemption expired after 16 years. The village therefore could not reasonably rely on the 1999 journal entry to extend the exemption for 14 years more

than the timeframe authorized by the ordinance. Nor can a 2017 e-mail correspondence with the county auditor's office estop the tax commissioner from recognizing that the TIF exemption had expired. The e-mail simply confirmed that the exemption had expired and relayed the tax department's suggestion that if Obetz passed a new ordinance, then the TIF exemption might retroactively apply to prior tax years. The village could not have relied on that after-the-fact correspondence in treating the property as tax exempt from 2015 to 2017.

{¶ 34} We therefore reject the argument raised under the third proposition of law.

**Conclusion**

{¶ 35} Finding no merit to Obetz's arguments, we conclude that the decision of the BTA is reasonable and lawful. And because Obetz has not sought application of the TIF exemption for years subsequent to 2017, we affirm the complete denial of the exemption application.

Decision affirmed.

O'CONNOR, C.J., and FISCHER, DEWINE, DONNELLY, STEWART, and BRUNNER, JJ., concur.

_____

Frost Brown Todd, L.L.C., Frank J. Reed Jr., Eugene L. Hollins, and Thaddeus M. Boggs, for appellant.

Dave Yost, Attorney General, and Daniel G. Kim, Assistant Attorney General, for appellee tax commissioner.

_____