[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Obetz v. Stinziano*, Slip Opinion No. 2024-Ohio-5460.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2024-OHIO-5460

THE STATE EX REL. THE CITY OF OBETZ *v*. STINZIANO, AUD., ET AL.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Obetz v. Stinziano*, Slip Opinion No. 2024-Ohio-5460.]**

*Mandamus—Prohibition—Taxation—R.C. 321.31—R.C. 321.33—County not entitled to withhold future real-estate settlement proceeds owed to a city and reallocate those proceeds to other taxing jurisdictions as a means of offsetting past overpayment of real-estate settlement proceeds to the city under a tax-increment-financing arrangement—Limited writ of mandamus granted—Writ of prohibition denied.*

(No. 2023-0610—Submitted March 26, 2024—Decided November 22, 2024.)

IN MANDAMUS and PROHIBITION.

———————————

DONNELLY, J., authored the opinion of the court, which KENNEDY, C.J., and DEWINE, BRUNNER, and DETERS, JJ., joined. STEWART, J., concurred in part and dissented in part, with an opinion. FISCHER, J., dissented.

**DONNELLY, J.**

{¶ 1} Relator, the City of Obetz, brought this original action in mandamus and prohibition against respondents, Franklin County Auditor Michael Stinziano and Franklin County Treasurer Cheryl Brooks Sullivan (collectively, "the county"). The controversy stems from a tax-increment-financing ("TIF") arrangement that Obetz put in place in 1997. Obetz erroneously received proceeds under that TIF arrangement in 2015, 2016, and 2017 that it should not have. As a partial corrective measure, Obetz tendered money to the county from its TIF account. The county also tried to correct the error by withholding the real-property-tax distribution that it owed Obetz for the first-half settlement of tax year 2022 and setting it off against the TIF funds that Obetz had received in error. The county reallocated the withheld amount to other taxing jurisdictions.

{¶ 2} Obetz requests that we grant a writ of mandamus directing the county to (1) return the money that Obetz tendered to the county as a partial corrective measure for its erroneous receipt of TIF funds, (2) pay Obetz the amount the county withheld from it in setoff and reallocated to other taxing jurisdictions for the first-half settlement of tax year 2022, and (3) pay Obetz future settlement distributions in full, without setoff. Alternatively, Obetz requests that we grant a writ of prohibition barring the county from engaging in the setoff-and-reallocation process for future settlement distributions. We grant the third subpart of Obetz's mandamus claim and deny all other requested relief.

## I. BACKGROUND

{¶ 3} We begin by reviewing the mechanics of a TIF arrangement and the county's real-estate settlement process.

*A. TIF arrangements*

**{¶ 4}** Ohio law authorizes TIF arrangements. *See, e.g.*, R.C. 5709.40 et seq. In *Obetz v. McClain*, 2021-Ohio-1706, ¶ 16-17, we summarized the mechanics of these arrangements, explaining:

> [TIF] "is a method of promoting and financing the development of real property by directing '"all or a portion of the increased property tax revenue that may result"' from the development to defraying the cost of improvements that are part of the development." *Kohl's Illinois, Inc. v. Marion Cty. Bd. of Revision*, 140 Ohio St.3d 522, 2014-Ohio-4353, 20 N.E.3d 711, ¶ 3, quoting *Princeton City School Dist. Bd. of Edn. v. Zaino*, 94 Ohio St.3d 66, 68, 760 N.E.2d 375 (2002), quoting Meck & Pearlman, *Ohio Planning and Zoning Law*, Section T 15.29, at 704 (2000).

> "Once a TIF agreement is in place, any increase in the assessed value of the designated parcels is subject, in whole or in part, to (1) an exemption from taxation and (2) a concomitant obligation of the property owner to make payments 'in lieu of tax' into a special fund used to pay for the development—such payments are referred to as 'service payments.' " *Fairfield Twp. Bd. of Trustees v. Testa*, 153 Ohio St.3d 255, 2018-Ohio-2381, 104 N.E.3d 749, ¶ 5, quoting R.C. 5709.73(B) and 5709.74. The service payments "cover the cost of public improvements in the incentive district, such as roads, water and sewer lines, or environmental remediation." *Sugarcreek Twp. v. Centerville*, 133 Ohio St.3d 467, 2012-Ohio-4649, 979 N.E.2d 261, ¶ 7.

**{¶ 5}** Ohio law treats a service payment as akin to a real-property tax payment. *See* R.C. 5709.42(A) ("annual service payments" are "charged and collected in the same manner and in the same amount as the real property taxes that would have been charged" but for a tax exemption); *see also* R.C. 5709.91(A) ("Service payments in lieu of taxes . . . shall be treated in the same manner as taxes, as defined in [R.C.] 323.01 . . . for all purposes of the lien described in [R.C.] 323.11 . . . ."); R.C. 323.01(C) ("'Taxes' means the total amount of all charges against an entry appearing on a tax list and the duplicate thereof, . . . including taxes levied against real estate . . . ."); R.C. 323.11 (describing the "lien of the state for taxes" applicable to "real property").

*B. The real-estate settlement process*

**{¶ 6}** Each year, county auditors must compile a list of the real property in their county showing, among other things, the value of each piece of property. R.C. 319.28(A). The auditor prepares the list in duplicate: the auditor's copy is the "auditor's general tax list," and the copy delivered by the auditor to the county treasurer is the "general duplicate." *Id.*; *see also Bernhard v. O'Brien*, 97 Ohio App. 359, 363 (1st Dist. 1953) (same).

**{¶ 7}** The county auditor must "determine the sums to be levied upon" each piece of real property based on information provided by authorized "officers and authorities." R.C. 319.30(A). "All taxes levied on property shall be extended on the tax list and duplicate by the county auditor of the county in which the property is located, and shall be collected by the county treasurer . . . ." R.C. 5705.03(C).

**{¶ 8}** In February of each year, the "county treasurer shall settle with the county auditor for all taxes and assessments that the treasurer has collected on the general duplicate." R.C. 321.24(A); *see also* R.C. 319.43(A). And in August of each year, the "treasurer shall settle with the auditor for all taxes and assessments that the treasurer has collected on the general duplicates . . . [that were] not included in the preceding February settlement." R.C. 321.24(C); *see also* R.C. 319.43(A).

**{¶ 9}** "On the first Monday of February and August, each year, the county treasurer shall pay over to the treasurer of the municipal corporation all moneys received by such county treasurer up to that date, arising from taxes levied and assessments made, belonging to the municipal corporation. Moneys received from other sources for municipal corporations shall be paid over" as otherwise prescribed. R.C. 321.33; *see also* R.C. 321.31 ("Immediately after each settlement with the county auditor . . . the county treasurer shall pay to . . . the treasurer of a municipal corporation . . . all moneys in the county treasury payable to such boards and subdivisions.").

### C. Obetz's erroneous receipt of TIF funds

**{¶ 10}** In 1997, Obetz, a municipal corporation, enacted an ordinance ("the 1997 ordinance") to implement a TIF arrangement for the development of property owned by the Goodyear Tire & Rubber Company. *Obetz*, 2021-Ohio-1706, at ¶ 5. The TIF arrangement required Goodyear to deposit semi-annual payments into a TIF fund for 16 years in lieu of paying taxes. *Id.* In 2017, a dispute arose regarding whether the TIF arrangement under the 1997 ordinance had been extended from 16 to 30 years based on language in the tax commissioner's 1999 decision granting a tax exemption for Goodyear's property. *Id.* at ¶ 7-8.

**{¶ 11}** In December 2017, Obetz enacted a new ordinance ("the 2017 ordinance") in an effort to extend the TIF arrangement set out in the 1997 ordinance from 16 to 30 years. *Id.* at ¶ 9. Obetz then applied to the tax commissioner for an exemption. In 2018, the tax commissioner denied Obetz's application, finding that the TIF arrangement set out in the 1997 ordinance expired at the end of the 2014 tax year and that the 2017 ordinance did not continue the original exemption but rather, it created a new exemption beginning with the 2018 tax year. *Id.* at ¶ 10-11. The tax commissioner concluded that the county auditor had properly returned the Goodyear property to the tax list for tax years 2015, 2016, and 2017. *Id.* at ¶ 11. The Board of Tax Appeals affirmed the tax commissioner's decision, *id.* at ¶ 12,

and Obetz appealed to this court. In 2021, we affirmed the board's decision, *id.* at ¶ 3-4, holding that the original exemption expired at the end of tax year 2014 and that the exemption under the 2017 ordinance became effective starting in tax year 2018, *id.* at ¶ 2, citing R.C. 5709.40(G).

{¶ 12} M. Matthew Cramblit, Obetz's finance director, attested in an affidavit attached to the verified complaint in this original action that "[a]s a result of the [*Obetz*] decision, Obetz had received Goodyear TIF funds for tax years 2015 and 2016 that, because the Goodyear TIF exemption was not extended to those years, should have been distributed to [other] taxing jurisdictions." Matthew Jackson, a Franklin County deputy auditor, attested in his affidavit that the affected taxing jurisdictions are (1) the Hamilton Local School District, (2) the Eastland-Fairfield Joint Vocational School District, (3) Hamilton Township, (4) the Columbus Metropolitan Library, and (5) Franklin County (the general fund; Children Services; the Alcohol, Drug, and Mental Health Board; the Board of Developmental Disabilities; the Columbus Zoo; and the Office on Aging).

{¶ 13} In August 2021, Mary Johnson, chief counsel with the tax unit of the Franklin County Prosecutor's Office, contacted Obetz stating that she was hoping "to reach an agreement with Obetz for a scheduled repayment of the monies—an agreement that [would be] acceptable to the affected political subdivisions as well." Eugene Hollins, Director of Law for Obetz, replied to Johnson, expressing Obetz's interest in resolving the matter, but he opined "that there [was] no basis in law for [the county's] withholding distributions to [Obetz] as a mechanism to 'true up' the Goodyear TIF fund." Hollins notified Johnson that Obetz held $212,963.01 in its Goodyear TIF account. Johnson, in turn, informed Hollins that the county was evaluating methods for structuring a repayment agreement, and she requested that Obetz immediately return the $212,963.01 to the county auditor. According to Cramblit, Obetz returned the money as requested "[i]n the spirit of negotiating a resolution."

6

{¶ 14} Thereafter, negotiations stalled, and Obetz refused to repay any further amount demanded by the county. In February 2023, Johnson informed Hollins that because a repayment agreement had not been reached, the county auditor would "proceed with set-off of Obetz'[s] General Fund at the upcoming settlement of [the first half of tax year 2022]."

{¶ 15} As promised, in March 2023, the county auditor withheld Obetz's first-half real-estate settlement for the 2022 tax year, totaling $194,944.32. In doing so, the auditor created a new deduction labeled "Obetz Exp TIF 90-005 repay" and set off the withheld amount against the remaining balance of Goodyear TIF funds that Obetz had erroneously received, meaning Obetz received zero dollars from the general fund for its March 2023 settlement. The auditor reallocated the withheld funds to the taxing jurisdictions that were affected by Obetz's erroneous receipt of Goodyear TIF funds.

*D. This original action*

{¶ 16} Obetz brought this original action against the county in May 2023 after it did not receive its first-half real-estate settlement for tax year 2022. In Count One, Obetz seeks a three-part writ of mandamus compelling the county to (1) return the $212,963.01 that Obetz tendered to the county as a partial corrective measure for its erroneous receipt of Goodyear TIF funds, (2) pay Obetz $194,944.32 to account for the funds the county withheld from Obetz for the first-half settlement of tax year 2022 and reallocated to other taxing jurisdictions, and (3) pay Obetz future settlement distributions in full, without setoff. Alternatively, in Count Two, Obetz seeks a writ of prohibition barring the county from engaging in the set-off-and-reallocation process for future settlement distributions.

{¶ 17} We denied the county's motion to dismiss Obetz's complaint and granted an alternative writ ordering the submission of evidence and briefs. 2023-Ohio-3100. Later, we denied the Franklin County Board of Commissioners' motion to intervene and motion for leave to file a merit brief and denied the

county's motion for joinder of the affected taxing districts. 2023-Ohio-4259. We then granted the county's motion for oral argument. 2024-Ohio-493. At oral argument, counsel for the county informed the court that the county auditor had recently withheld Obetz's second-half settlement for the 2022 tax year.

## II. ANALYSIS

### A. Mandamus

{¶ 18} To be entitled to a writ of mandamus, Obetz must show that (1) it has a clear legal right to the requested relief, (2) the county auditor or county treasurer has a clear legal duty to provide that relief, and (3) it lacks an adequate remedy in the ordinary course of the law. *State ex rel. Waters v. Spaeth*, 2012-Ohio-69, ¶ 6. We address the three subparts of Obetz's request for a writ of mandamus in turn.

#### 1. Obetz's request for a writ compelling the county to return $212,963.01 to Obetz

{¶ 19} In the first subpart of its mandamus claim, Obetz seeks an order directing the county to return $212,963.01 that Obetz paid to the county. This is the amount Obetz held in its Goodyear TIF account as of August 2021, which it paid to the county to help facilitate a resolution of the issue regarding Obetz's erroneous receipt of Goodyear TIF funds. We deny the writ as to this subpart because Obetz fails to cite any authority establishing that the county has a clear legal duty to return funds that Obetz voluntarily paid to the county as part of repayment negotiations.

#### 2. Obetz's request for a writ compelling the county to pay Obetz $194,944.32, which the county withheld in setoff and reallocated to other taxing jurisdictions for the first-half real-estate settlement of tax year 2022

{¶ 20} In the second subpart of its mandamus claim, Obetz seeks an order directing the county to pay Obetz $194,944.32, which is the amount that the county withheld from Obetz for the first-half real-estate settlement of tax year 2022 and

set off against what Obetz erroneously received in Goodyear TIF funds by reallocating it to other taxing jurisdictions. We deny the writ as to this subpart. Even if the county should have distributed this amount to Obetz in the first instance, the county's failure to do so is not enough to establish Obetz's entitlement to relief by ordering the county to pay it now, because that money is now in the hands of other taxing jurisdictions. Because Obetz cites no authority establishing that the county has a clear legal duty to claw back the funds that it reallocated to other taxing jurisdictions so that the funds may then be paid to Obetz, Obetz is not entitled to relief on this subpart of its mandamus claim.

### 3. Obetz's request for a writ compelling the county to make future real-estate settlement distributions without setoff

**{¶ 21}** In the last subpart of its mandamus claim, Obetz seeks an order directing the county to pay it future real-estate settlement distributions without setoff.

#### a. Anticipated nonperformance and prohibitory injunction

**{¶ 22}** Before addressing the merits of Obetz's argument, we address two doctrinal defenses that the county raises. The county asserts that Obetz's claim for relief fails because (1) Obetz seeks redress for the anticipated nonperformance of a duty by the county and (2) Obetz seeks a prohibitory injunction. We disagree.

##### i. Anticipated nonperformance of a duty

**{¶ 23}** Before oral argument, the county maintained that no decision had been made by the county auditor whether he would set off and reallocate Obetz's future settlement distributions. The county accordingly argued that in the third subpart of Obetz's mandamus claim, Obetz impermissibly seeks to remedy the anticipated discretionary decisions of the county by obtaining a writ compelling the county to generally follow the law when making future settlement distributions. However, the county also maintained in its merit brief that the county auditor was statutorily *required* to use future settlement distributions that would be owed to

Obetz to offset the amount of Goodyear TIF funds that Obetz had erroneously received. Further, at oral argument, the county's counsel stated that the county had, as Obetz anticipated, withheld Obetz's second-half settlement for tax year 2022.

**{¶ 24}** It is true that mandamus is not a proper vehicle "'to remedy the anticipated nonperformance of a duty.'" *State ex rel. Evans v. Tieman*, 2019-Ohio-2411, ¶ 16, quoting *State ex rel. Home Care Pharmacy, Inc. v. Creasy*, 67 Ohio St.2d 342, 343 (1981). However, it is also true that "[w]here a clear legal duty is imposed and the facts show that the person on whom such duty rests will refuse to comply, a writ of mandamus may issue, even if the time for performance has not yet expired." *State ex rel. Lucas Cty. Bd. of Cty. Commrs. v. Austin*, 158 Ohio St. 476, 479 (1953).

**{¶ 25}** We must take into account the entirety of the county's claims in its merit brief, as well as the fact that the record has evolved since the county filed its evidence in this case. *See State ex rel. Pike Cty. Convention & Visitor's Bur. v. Pike Cty. Bd. of Commrs.*, 2021-Ohio-4031, ¶ 24, quoting *State ex rel. Everhart v. McIntosh*, 2007-Ohio-4798, ¶ 11 ("In extraordinary-writ cases, courts are not limited to the facts at the time a proceeding is commenced, but should consider facts at the time it determines whether to grant the writ."). We conclude under the facts of this case that the county will refuse to pay Obetz the full amount of the funds it may be owed in future settlements. We accordingly reject the county's anticipated-nonperformance argument.

### ii. Prohibitory injunction

**{¶ 26}** The county contends that Obetz's claim for relief should also fail because although Obetz has cast its action as one seeking relief in mandamus, it actually seeks an order enjoining the county auditor from applying a setoff against future distributions.

**{¶ 27}** It is well established that this court lacks the authority to issue an injunction in the context of an original action. *State ex rel. Smith v. Indus. Comm.*,

139 Ohio St. 303 (1942), paragraph one of the syllabus. "A writ of mandamus compels action or commands the performance of a duty, while a decree of injunction ordinarily restrains or forbids the performance of a specified act." *Id.* at paragraph two of the syllabus. When it is manifest that the real object of a relator's action is to obtain an injunction, a cause of action in mandamus does not lie. *State ex rel. Zupancic v. Limbach*, 58 Ohio St.3d 130, 133 (1991).

{¶ 28} In *Zupancic*, county officials brought a mandamus action seeking to compel the tax commissioner to apply a former statute that had been superseded by a new statute. This court rejected the tax commissioner's argument that the county officials sought an injunction against application of the new statute. We concluded, "[The county officials] do not seek a prohibitory injunction. Although the [county officials'] request is for this court to have the [tax commissioner] refrain from exercising her statutory responsibility, the essence of their request is for the [tax commissioner] to abide by a former statute." *Id.*

{¶ 29} We applied the logic from our decision in *Zupancic* in *Pike Cty. Convention and Visitor's Bur.*, 2021-Ohio-4031. In that case, the visitor's bureau sought a writ of mandamus to compel the board of county commissioners to distribute funds pursuant to a statute. Although the effect of the bureau's requested relief was to prohibit enforcement of the county commissioners' resolutions directing the funds to be distributed elsewhere, this court concluded that under the holding in *Zupancic*, the bureau's claim was cognizable in mandamus because it sought to compel rather than prohibit official action. *Pike Cty.* at ¶ 14.

{¶ 30} Here, Obetz points to R.C. 321.31 and 321.33 in support of its request for a writ of mandamus ordering the county to distribute its future settlements in full, without setoff. As discussed above, these statutes generally require a county treasurer to pay all money from the county treasury that is owed to a municipal corporation—a point that the county does not dispute. As in *Zupancic* and *Pike Cty.*, although there is an aspect of Obetz's mandamus claim

that, if successful, would prohibit certain actions on the part of the county, the essence of Obetz's request for relief is to compel the county to action by way of making payment of future settlement funds to Obetz without setoff. We accordingly reject the county's prohibitory-injunction argument.

b. Clear legal duty and clear legal right

### i. R.C. 321.31 and R.C. 321.33

{¶ 31} Obetz relies on R.C. 321.31 and 321.33 as the authority for its clear legal right to relief and the clear legal duty on the part of the county to provide that relief. The county does not dispute Obetz's reading of these statutes, but it argues that other provisions of Ohio law empower it to withhold future settlement funds from Obetz.

### ii. R.C. 319.44

{¶ 32} The county first argues that it has the power to withhold future settlement funds from Obetz under R.C. 319.44. That statute provides:

> [1] After first correcting any error which may have occurred in the apportionment of taxes at any previous settlement, [2] the county auditor shall certify the balance due the state, the balance due the county, the balance due for road purposes, and the balance due the township, and shall record such list of delinquencies in his office forthwith.

{¶ 33} In the county's view, the use of "any" signals the General Assembly's "intent to authorize correction of the full universe of possible 'errors' which may have occurred at any previous settlement." Obetz counters that the errors eligible for correction under R.C. 319.44 must relate to roads, the state, a county, or a township, not, as here, a city.

12

**{¶ 34}** It is true that the word "any" has an expansive meaning. *See United States v. Gonzales*, 520 U.S. 1, 5 (1997) ("Read naturally, the word 'any' has an expansive meaning . . . ."). But the word's broad meaning alone is not dispositive of this issue. Indeed, we have warned against assigning dispositive significance to the "'hyperliteral meaning of each word' " used in a statute, observing instead that a statute's interpreter must "consider the ordinary meaning of the word as it is used within the surrounding text." *Great Lakes Bar Control, Inc. v. Testa*, 2018-Ohio-5207, ¶ 9, quoting Scalia & Garner, *Reading Law: The Interpretation of Legal Texts*, 356 (2012). Because words gather meaning from their context, it is important to consider the neighboring words within a statute to understand a particular word's meaning. *See State v. Romage*, 2014-Ohio-783, ¶ 13 ("a word is given a more precise meaning by the neighboring words with which it is associated").

**{¶ 35}** Under these principles, we must read both clauses of R.C. 319.44 to understand its meaning. We have identified those two clauses as "[1]" and "[2]" in the quoted language above. The first clause speaks to the county auditor's error-correction powers. The second clause speaks to the county auditor's process of certifying the balances due for road purposes and for the following units of government: the state, the county, and the township. When read together, these two clauses convey that the county auditor's error-correction power arises as part of the process of certifying the balance due for road purposes and for the identified units of government. Notably, Obetz is a city. Because a city is not a unit of government identified in R.C. 319.44, the county auditor's error-correction powers under that statute do not apply here. *See In re Establishing the Solar Generation Fund Rider*, 2022-Ohio-4348, ¶ 34, fn. 2 ("the expression of one item in an associated group or series excludes unmentioned items").

**{¶ 36}** Our holding in *State v. Staley*, 38 Ohio St. 259 (1882), on which the county relies, does not require a different result. That case involved a mandamus

action brought by the state treasurer against a county treasurer. The county auditor in that case withheld certain amounts that were owed to the state and accounted for that withholding in an entry denominated "'net balance of errors corrected,'" *Staley* at 267, prompting the state treasurer to seek a writ ordering the county treasurer to pay from the county treasury and into the state treasury the sum that had been withheld. The statute at issue in *Staley*, R.S. 1043, contained elements of what is now found in R.C. 319.43 and 319.44. R.S. 1043 permitted (just as R.C. 319.44 permits now) a county treasurer to deduct from the several taxes charged on the duplicate (1) delinquent taxes and (2) collection fees. Because the former statute did not permit deductions for a "net balance of errors corrected," this court concluded that the deduction taken by the county auditor could not stand. The court also observed that it was "[t]rue, in making the apportionment the auditor [was] authorized to correct any error 'which may have occurred in the apportionment of taxes at any previous settlement.' But, by correcting such errors, the amount to be apportioned [was] neither increased nor diminished. Whatever sum may thus [have been] taken from one fund must [have been] added to another." *Staley* at 269.

{¶ 37} The county here reads the immediately preceding quote as validating its actions because, it says, it took a sum away from Obetz and added it to the accounts of the affected taxing jurisdictions. But this isolated passage from *Staley*, written under a materially different set of facts, does not decide this case. *See Bramwell v. United States Fid. & Guar. Co.*, 269 U.S. 483, 489 (1926) ("It is a rule of universal application that general expressions used in a court's opinion are to be taken in connection with the case under consideration."). Because *Staley* did not involve a city-versus-county controversy as presented here, we decline the county's invitation to "read too much into too little," *Natl. Pork Producers Council v. Ross*, 598 U.S. 356, 373 (2023); *see also id.* at 374 (emphasizing that opinions "must be read with a careful eye to context").

14

### iii.  R.C. 323.133(B), R.C. 5713.08, and R.C. 5715.22

{¶ 38} The county's second argument in support of its claim that Ohio law empowers it to withhold future settlement funds from Obetz lies in linking the aspects of three statutes: R.C. 323.133(B), 5713.08, and 5715.22.  These statutes relate to the procedures that apply, and the financial consequences that result, when real property is either added to or removed from the tax-exempt list.

{¶ 39} R.C. 5713.08(A) directs county auditors to make a list of real property that has been deemed tax exempt and to correct that list by adding or removing property that has gained or lost its tax-exempt status.  R.C. 321.133(B) directs the auditor, "upon receipt of the tax commissioner's final determination concerning an application for exemption," to "correct the tax lists for the years covered in the application and any other year that elapsed while the application was under review or appeal."  For each year, the auditor must determine the amount of unpaid taxes charged to the property.  *Id.*  If the auditor determines that the taxpayer made an overpayment of taxes during a year covered by the application, then the auditor must follow the procedures established in R.C. 5715.22.  *Id.*  Under R.C. 5715.22, if the taxpayer is found to have made an overpayment of taxes, then the auditor shall credit the overpayment against any taxes then due from the taxpayer and "at the next or any succeeding settlement the amount of any such credit shall be deducted from the amounts of any taxes, assessments, or charges distributable to the county or any taxing unit therein which has received the benefit of the taxes, assessments, or charges previously overpaid, in proportion to the benefits previously received."

{¶ 40} The county asserts that it followed this framework when it withheld the funds owed to Obetz for the first-half settlement of the 2022 tax year.  The problem for the county is that these statutes center on the idea that a *taxpayer*—not a *recipient* of tax revenue, as Obetz is here—has made an overpayment of taxes in conjunction with an exemption application.  Indeed, R.C. 5715.22 conveys that the

process for remedying an overpayment of taxes is triggered when a taxpayer has "paid" an "amount of taxes . . . in excess of the amount due," resulting in an "overpayment." In such a case, the county auditor must credit the taxpayer for the overpayment and, at the next settlement, deduct the amount of the overpayment from the taxes distributable to a recipient that benefited from the overpayment in a proportionate amount. Here, the county has not shown that the taxpayer—that is, Goodyear—made an overpayment of taxes. Indeed, the county itself says that given the atypical features of a TIF arrangement, Goodyear's liability remained "unchanged." The focal point of the county's analysis, rather, is that Obetz received more tax revenues than it should have—and others received less—because of problems in accounting for the terms of the TIF arrangement. Redress for that problem is not contemplated by R.C. 323.133(B), 5713.08, or 5715.22. We reject the county's reliance on these statutes.

c. Adequate legal remedy

{¶ 41} Having decided that Obetz meets the clear-legal-right and clear-legal-duty elements of the mandamus standard, we now must decide whether Obetz lacks an adequate legal remedy in the ordinary course of the law. According to Obetz, "there is no adequate administrative or legal process that [it] can follow in order to prevent [the county] from continuing to withhold" settlement funds that it is owed.

{¶ 42} We agree with the county that Obetz's argument is terse. But there is a good reason for Obetz's brevity: none of the parties in this case have identified a remedy short of a writ of mandamus that could provide Obetz with the relief it seeks. We therefore reject the county's argument that Obetz has failed to adequately develop its analysis on this point.

{¶ 43} The county claims that the best way to resolve this dispute is for Obetz to bring an unjust-enrichment claim against the affected taxing jurisdictions. But this would do nothing to redress Obetz's claim presented here, because Obetz

16

seeks to compel the county—not the affected taxing jurisdictions—to perform a mandatory duty, that is, to pay Obetz the future settlement funds it is owed, without setoff.

{¶ 44} We conclude that Obetz has shown that it lacks an adequate legal remedy in the ordinary course of the law as to this aspect of its mandamus claim. We accordingly grant the writ as to the third subpart of that claim.

### B. Prohibition

{¶ 45} Obetz seeks a writ of prohibition "barring [the county] from withholding or setting off any future Real Estate Settlements" to correct the TIF-fund issue. In support of its request for a writ of prohibition, Obetz points to *State ex rel. Elder v. Camplese*, 2015-Ohio-3628, ¶ 13. In *Elder*, to obtain a writ of prohibition, the relator needed to establish that (1) the respondent, who was a judge, was about to exercise or had already exercised judicial power, (2) the exercise of that power was unauthorized by law, and (3) denying the writ would have resulted in injury for which no other adequate remedy existed in the ordinary course of the law. The same burden for establishing entitlement to a writ of prohibition applies here.

{¶ 46} The problem for Obetz is that unlike in *Elder*, the respondents in this case are not judicial officers. And Obetz cites no authority for the proposition that the county's conduct should be understood as akin to the exercise of judicial power. We therefore deny the writ of prohibition.

### C. The sufficiency of the affidavit attached to Obetz's complaint

{¶ 47} The county argues that this case should be dismissed because the affidavit of Obetz City Administrator E. Rod Davisson, which Obetz attached to its complaint, does not meet the personal-knowledge requirement of S.Ct.Prac.R. 12.02(B)(2), which provides that an affidavit attached to a complaint filed in an original action "shall be made on personal knowledge" of the affiant. In support of its argument for dismissal of this claim, the county cites *State ex rel. Evans v.*

*Blackwell*, 2006-Ohio-5439, ¶ 31-34, in which we dismissed an original action under the predecessor to S.Ct.Prac.R. 12.02(B)(2) because the affiant's attestation that the information in his affidavit was "true and correct to the best of his knowledge" was insufficient to meet the personal-knowledge requirement of the rule, *id.* at ¶ 32. The county also cites *State ex rel. Esarco v. Youngstown City Council*, 2007-Ohio-5699, in which we dismissed an original action because the affiant attested that the facts in the complaint were based simply on the "'best'" of his knowledge, information, and belief, *id.* at ¶ 15.

**{¶ 48}** Here, in paragraph two of the verification page to his affidavit, Davisson attested that the factual allegations in the complaint are "true and correct to the best of [his] knowledge, information, and belief." The language used by Davisson is similar to the language we analyzed in *Evans*. But the county overlooks paragraph one of the affidavit's verification page, in which Davisson attested that he has "personal knowledge of the facts" set forth in the complaint. Davisson's attestation that he has personal knowledge of the facts of this case renders the facts of *Blackwell* and *Esarco* distinguishable. We therefore reject the county's argument that the case should be dismissed for failure to comply with the personal-knowledge requirement of S.Ct.Prac.R. 12.02(B)(2).

### III.  CONCLUSION

**{¶ 49}** Obetz's request for a writ of mandamus is granted as to subpart three and denied as to subparts one and two. Obetz's request for a writ of prohibition is denied.

Limited writ of mandamus granted<br>and writ of prohibition denied.

———————————

**STEWART, J., concurring in part and dissenting in part.**

**{¶ 50}** I agree with the majority's decision to deny relator the City of Obetz's request for a writ of prohibition against respondents, Franklin County

Auditor Michael Stinziano and Franklin County Treasurer Cheryl Brooks Sullivan (collectively, "the county"). And I agree with the majority's decision to deny Obetz's request for a writ of mandamus on the first two subparts of its mandamus claim by (1) denying Obetz's request for an order directing the county to return to Obetz the money it already tendered to the county and (2) denying Obetz's request for an order directing the county to return to Obetz the funds the county withheld from it and reallocated to other taxing jurisdictions for tax year 2022.

**{¶ 51}** I disagree, however, with the majority's decision to grant a writ of mandamus ordering the county to pay Obetz future settlement distributions in full, without setoff. Regarding this third subpart of Obetz's mandamus claim, Obetz has failed to show that it does not have an adequate remedy in the ordinary course of the law, because it could file a declaratory-judgment action in the Franklin County Court of Common Pleas. However, even if a declaratory-judgment action would not provide Obetz with a full remedy, this court would still lack jurisdiction to order the requested mandamus relief, because what Obetz seeks in addition to a declaratory judgment is a prohibitory injunction.

**{¶ 52}** A writ of mandamus is an extraordinary remedy that should be exercised with caution and issued only when the right to extraordinary relief is clear. *State ex rel. Taylor v. Glasser*, 50 Ohio St. 165, 166 (1977). A writ of mandamus "must not be issued when there is a plain and adequate remedy in the ordinary course of the law." R.C. 2731.05; *see also State ex rel. Waters v. Spaeth*, 2012-Ohio-69, ¶ 6; *State ex rel. Natl. Emps. Network Alliance, Inc. v. Ryan*, 2010-Ohio-578, ¶ 1 ("Mandamus cannot issue when the relator has an adequate remedy at law.").

**{¶ 53}** Typically, when an action for a declaratory judgment would provide the petitioner with a complete remedy, a writ of mandamus is unnecessary because an adequate legal remedy is available to the petitioner. *See State ex rel. Manley v. Walsh*, 2014-Ohio-4563, ¶ 29, citing *State ex rel. Viox Builders, Inc. v. Lancaster*,

46 Ohio St.3d 144, 145 (1989).  However, when a declaratory judgment would not provide a complete remedy unless coupled with a mandatory injunction, the availability of a declaratory-judgment action would not be an appropriate basis to deny a writ of mandamus to which a petitioner would otherwise be entitled.  *Id.*, citing *State ex rel. Fenske v. McGovern*, 11 Ohio St.3d 129 (1984); *see also State ex rel. Gadell-Newton v. Husted*, 2018-Ohio-1854, ¶ 9.  On the other hand, when a request for a declaratory judgment is coupled with a request for a prohibitory injunction, this court has no authority to grant the requested relief under the guise of a writ of mandamus.  *See State ex rel. Crabtree v. Franklin Cty. Bd. of Health*, 1997-Ohio-274, ¶ 6 ("Neither this court nor a court of appeals has original jurisdiction in prohibitory injunction."); *see also Williams v. Trim*, 2015-Ohio-3372, ¶ 12; *Gadell-Newton* at ¶9 (when the real objects sought are a declaratory judgment and a prohibitory injunction, the complaint does not state a cause of action in mandamus and must be dismissed for lack of jurisdiction).

**{¶ 54}** This court has explained the difference between a mandatory injunction and a prohibitory injunction as follows:

> The difference between the two forms of relief is simple: "a prohibitory injunction is used to prevent a future injury, but a mandatory injunction is used to remedy past injuries."  *State ex rel. Gen. Motors Corp. v. Indus. Comm.*, 117 Ohio St.3d 480, 2008-Ohio-1593, 884 N.E.2d 1075, ¶ 12.  The court distinguishes between the two by "examining the complaint to determine whether it actually seeks to prevent, rather than compel, official action."  *State ex rel. Evans v. Blackwell*, 111 Ohio St.3d 437, 2006-Ohio-5439, 857 N.E.2d 88, ¶ 20; *see also State ex rel. Smith v. Indus. Comm.*, 139 Ohio St. 303, 306, 39 N.E.2d 838 (1942) ("The functions of an injunction are ordinarily to restrain motion and enforce inaction,

while those of mandamus are to set in motion and to compel action.").

*Gadell-Newton* at ¶10.

{¶ 55} In this case, the majority has determined that the essence of the third subpart of Obetz's request for mandamus relief is not to seek a prohibitory injunction but rather to compel the county to comply with a clear legal duty to disburse settlement funds to Obetz in the future. *See* majority opinion, ¶ 30. In taking this position, the majority concedes that "mandamus is not a proper vehicle to remedy the anticipated nonperformance of a duty" (cleaned up), *id.* at ¶ 24. Nevertheless, the majority reviews the third subpart of Obetz's mandamus claim on the grounds that "'[w]here a clear legal duty is imposed and the facts show that the person on whom such duty rests will refuse to comply, a writ of mandamus may issue, even if the time for performance has not yet expired.'" *Id.*, quoting *State ex rel. Lucas Cty. Bd. of Cty. Commrs. v. Austin*, 158 Ohio St. 476, 479 (1953). The majority's rationale puts the proverbial cart before the horse.

{¶ 56} To begin with, the record does not indicate that the county is withholding settlement funds earmarked for Obetz and is distributing those funds to other taxing jurisdictions just to thumb its nose at what it understands to be a clear legal duty to disburse the funds to Obetz. Rather, the county is withholding the funds and distributing them to other taxing jurisdictions because it believes it is legally permitted to do so under its interpretation of certain statutory provisions. Of course Obetz disagrees with the county on this point. But a disagreement about what the law requires does not necessitate mandamus relief. Instead, a declaratory judgment would reconcile the matter.

{¶ 57} The Declaratory Judgment Act, R.C. Ch. 2721, provides that "any person whose rights, status, or other legal relations are affected by a constitutional provision, *statute*, [or] rule . . . may have determined any question of construction

or validity arising under the instrument, constitutional provision, *statute*, [or] rule . . . and obtain a declaration of rights, status, or other legal relations under it." (Emphasis added.) R.C. 2721.03. Applying this statute to the facts of this case, it becomes clear that what Obetz wants first and foremost is a declaratory judgment. Obetz seeks a judgment in its favor that says that R.C. 321.31 and 321.33 require the county to pay settlement funds to Obetz and that certain statutes on which the county relies do not allow the county to withhold and then disburse funds to other taxing jurisdictions. Nothing in the record clearly indicates that an action for a declaratory judgment would fail to provide Obetz with a complete remedy. A declaratory judgment, in effect, would clarify the law applicable here. And there is no indication that the county would choose not to comply with the law once it is clarified. Accordingly, it appears that Obetz has an adequate legal remedy in the ordinary course of the law by way of a declaratory-judgment action.

{¶ 58} Even if a declaratory-judgment action would not provide Obetz with a complete remedy, this court still would not be able to provide Obetz the mandamus relief it seeks, because we lack jurisdiction to issue a prohibitory injunction. *See Crabtree*, 1997-Ohio-274, at ¶ 6. Aside from seeking a declaration from this court as to what the law requires the county to do or not do, Obetz also seeks to prevent the county from disbursing the settlement funds that Obetz claims it is owed, to other taxing jurisdictions in the immediate future while this case is pending and thereafter. This clearly is a request for prohibitory injunction. *See Gen. Motors Corp.*, 2008-Ohio-1593, at ¶12 ("A prohibitory injunction preserves the status quo by enjoining a defendant from performing the challenged acts in the future. A mandatory injunction, however, is an extraordinary remedy that compels the defendant to restore a party's rights through an affirmative action" [citations omitted].).

{¶ 59} That the majority could somehow interpret Obetz's request for this court to issue a writ to prevent the county from distributing funds to other taxing

jurisdictions as a request for a mandatory injunction—in other words, a request to *compel* rather than *prohibit* action, *see* majority opinion at ¶ 30—makes no sense. This is especially true given that Obetz has alternatively asked this court to grant a writ of prohibition "preventing [the county] from withholding taxes otherwise owed to Obetz or setting off any future real estate settlements based upon Goodyear [tax-increment-financing] 'overdistributions.' "

{¶ 60} At bottom, a writ of prohibition is little more than a prohibitory injunction issued against a lower court or quasi-judicial body, ordering it not to take future action in a specific case or matter, i.e., an order prohibiting future action. *See In re Baltimore Mail S. S. Co. v. Fawcett*, 269 N.Y. 379, 383 (1936), quoting *People ex rel. Livingston v. Wyatt*, 186 N.Y. 383, 394 (1906) ("The writ of prohibition was devised to halt a threatened judicial usurpation of jurisdiction before it causes damage. 'It is in effect an injunction against a court' . . . ").

{¶ 61} While I agree with the majority's decision to not grant Obetz's request for a writ of prohibition because Obetz does not meet the elements necessary for one to issue,[1] the fact that Obetz would think it is appropriate to request a writ of prohibition sheds light on what the underlying mandamus request is really about: preventing the county from taking the money that Obetz argues it is owed and giving that money to other taxing jurisdictions. Because this court does not have jurisdiction to issue a prohibitory injunction under the guise of mandamus relief, the court should dismiss the third subpart of Obetz's mandamus claim and let Obetz pursue its remedy in a court that has jurisdiction to provide the requested relief.

---

O.J. Scheaf & Associates, L.L.C., and O. Judson Scheaf III; and Eugene Hollins, Obetz Law Director, for relator.

---

1. The county is not a judicial or quasi-judicial body.

G. Gary Tyack, Franklin County Prosecuting Attorney, and Charles Reginald Ellis and Mary Elizabeth Johnson, Assistant Prosecuting Attorneys; and Bricker Graydon, L.L.P., and Justin W. Ristau and Adam W. Seeley, for respondents.

G. Gary Tyack, Franklin County Prosecuting Attorney, and Charles Reginald Ellis and Mary Elizabeth Johnson, Assistant Prosecuting Attorneys, urging dismissal of relator's complaint or denial of relator's request for writs of mandamus and prohibition for amici curiae Franklin County Board of Commissioners, the Columbus Public Library, and the Columbus and Franklin County Metropolitan Park District.

Brosius, Johnson & Griggs, L.L.C., and Peter N. Griggs, urging dismissal of relator's complaint or denial of relator's request for writs of mandamus and prohibition for amicus curiae Hamilton Township.

Porter, Wright, Morris & Arthur, L.L.P., and Fred G. Pressley, urging dismissal of relator's complaint or denial of relator's request for writs of mandamus and prohibition for amicus curiae The Columbus Zoological Park Association.

————————————