[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Springfield City School Dist. Bd. of End. v. Hamilton,* Slip Opinion No. 2025-Ohio-4427.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2025-OHIO-4427

THE STATE EX REL. SPRINGFIELD CITY SCHOOL DISTRICT BOARD OF EDUCATION *v.* HAMILTON, AUD.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Springfield City School Dist. Bd. of Edn. v. Hamilton,* "Slip Opinion No." 2025-Ohio-4427.]

*Mandamus—R.C. 133.18(A) and (H)—County auditor has no discretion to refuse to place voter-approved property-tax levy on tax list and duplicate for collection while voter-approved bonds issued by local school district board of education remain outstanding—Limited writ granted.*

(No. 2024-1425—Submitted August 6, 2025—Decided September 25, 2025.)

IN MANDAMUS.

_____

The per curiam opinion below was joined by KENNEDY, C.J., and FISCHER, DEWINE, BRUNNER, DETERS, HAWKINS, and SHANAHAN, JJ.

**Per Curiam.**

{¶ 1} In May 2013, voters in the Springfield City School District approved the issuance of bonds in the principal amount of $13,995,000 for improving school facilities, enhancing technology and building security, and acquiring school buses. Voters approved for the bonds to be "repaid annually over a maximum period of 12 years." Voters also approved a property-tax levy of 2.2 mills ("the bond levy") to pay the annual debt charges on the bonds.

{¶ 2} Relator, the Springfield City School District Board of Education ("the school district"), issued the voter-approved bonds in two series: one series was issued in 2013 and another was issued in 2019. Collection of property taxes associated with those issuances began in 2014 and 2020, respectively. The 2013 bonds will reach maximum maturity on December 1, 2026, and the 2019 bonds will reach maximum maturity on December 1, 2031.

{¶ 3} Respondent, Clark County Auditor Hillary Hamilton, asserts that collection for the bond levy cannot exceed 12 years, and therefore, she will not place the bond levy on the tax list and duplicate for tax year 2025 (collection year 2026) onward. The school district asks us to issue a writ of mandamus ordering the auditor "to collect the bond levy approved by the voters" through collection year 2031, the maximum-maturity date of the bonds issued in accord with the bond levy.

{¶ 4} Because the auditor has no discretion to refuse to place the bond levy on the tax list and duplicate for collection while the bonds remain outstanding, we grant a limited writ ordering the auditor to place the bond levy on the tax list and duplicate for collection in 2026. However, the school district is not yet entitled to a writ of mandamus ordering the auditor to place the bond levy on the tax list and duplicate for collection years 2027 through 2031, because the auditor's duty to take such action has not yet been triggered for those years.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. The Process of Issuing Bonds and Collecting the Supporting Tax Levy

{¶ 5} Under R.C. 133.18(A), the "taxing authority of a subdivision may by legislation submit to the electors of the subdivision the question of issuing any general obligation bonds, for one purpose, that the subdivision has power or authority to issue." *See also* R.C. 133.18(B) through (D) (describing the process for submitting bond issues to electors of a political subdivision). The board of education of a school district is defined as a "taxing authority" for purposes of R.C. Ch. 133. *See* R.C. 133.01(NN)(3).

{¶ 6} If the voters approve the bond issue, a board of education may proceed with issuing the bonds "and with the levy and collection of a property tax outside the tax limitation during the period the [bonds] are outstanding sufficient in amount to pay the debt charges on the [bonds]."[1] R.C. 133.18(H). If the board of education certifies the tax amount to the county auditor by November 30, the amount of the voter-approved property-tax levy "shall if requested by the [board of education] be included in the taxes levied for collection in the following year." *Id.* The statute further contemplates that the bonds need not be issued all at once. *See* R.C. 133.18(I)(3) and (I)(5). However, the board of education may not issue bonds with "a latest maturity exceeding the maximum number of years over which the principal of the bonds may be paid" as approved by the voters. R.C. 133.19(B)(2).

---

1. This "tax limitation" is ten mills, as set forth in R.C. 5705.02, which states:

> The aggregate amount of taxes that may be levied on any taxable property in any subdivision or other taxing unit shall not in any one year exceed ten mills on each dollar of tax valuation of such subdivision or other taxing unit, except for taxes specifically authorized to be levied in excess thereof. The limitation provided by this section shall be known as the "ten-mill limitation" . . .

*See also State ex rel. Perry Twp. Bd. of Trustees v. Husted*, 2018-Ohio-3830, ¶ 3, fn. 1.

### B. Voters Approved the School District's 2013 Bond Issue

{¶ 7} At a special election in May 2013, voters in the Springfield City School District approved a bond issue and tax levy that was presented on the ballot as follows:

Shall bonds be issued by the Springfield City School District for the purpose of **renovating, improving, refurbishing, and maintaining existing school facilities; furnishing and equipping the same; acquiring school buses; and upgrading and improving technology and building security enhancements district-wide and appurtenances thereto,** in the principal amount of $13,995,000 to be repaid annually over a maximum period of 12 years, and an annual levy of property taxes be made outside of the ten-mill limitation, estimated by the county auditor to average over the repayment period of the bond issue 2.2 mills for each one dollar of tax valuation, which amounts to $0.22 for each one hundred dollars of tax valuation, commencing in 2013, first due in calendar year 2014, to pay the annual debt charges on the bonds, and to pay debt charges on any notes issued in anticipation of those bonds?

___ **FOR THE BOND ISSUE**

___ **AGAINST THE BOND ISSUE**

(Boldface and capitalization in original.) The ballot language was identical to that prescribed in former R.C. 133.18(F)(1) as "[t]he form of the ballot to be used at the election." *See* 2011 Am.Sub.H.B. No. 153.

{¶ 8} Voters approved the bond issue by majority vote, allowing the school district to issue bonds in accordance with R.C. 133.21 to 133.33. *See* R.C. 133.18(H). Under R.C. 133.18(I)(2), the school district had until "the first day of

4

the sixth January following the election" (i.e., January 1, 2019) to "initially issue[]" the voter-approved bonds.

### C.  The School District Issued the Bonds in Two Series

{¶ 9} The school district issued the voter-approved bonds in two series. First, the school district issued $5,880,000 in bonds in September 2013 ("the Series 2013 bonds").  Collection of the bond levy for that series of bonds began in 2014. The maximum-maturity date of the Series 2013 bonds is December 1, 2026.[2]  For each tax year through 2018, the school district certified to the auditor the amount needed to pay the debt charges on the Series 2013 bonds, which the auditor in turn translated into a millage amount placed on real property within the Springfield City School District.  The school district received from the auditor the amounts collected and attributable to the bond levy for tax years 2013 through 2018.

{¶ 10} The school district issued a second bond series in the amount of $8,115,000 in November 2019 ("the Series 2019 bonds").  The maximum-maturity date of the Series 2019 bonds is December 1, 2031.  For each tax year since 2020, the school district has certified to the auditor the amount needed to pay the debt charges on both the Series 2013 bonds and the Series 2019 bonds.  The school district received the amounts collected under the bond levy for each tax year through 2023 (collection year 2024).  The parties anticipate that the school district will timely receive amounts collected under the bond levy for tax year 2024 (collection year 2025).

---

2. R.C. 133.20(A) provides that for bonds, the "period of limitations on their last maturity, referred to as their maximum maturity, shall be measured from a date twelve months prior to the first date on which provision for payment of principal is made."  Though the Series 2013 bonds were issued in September 2013, the first principal payment on them was not due until December 1, 2015, making their maximum-maturity date December 1, 2026, under R.C. 133.20(A).

## D.  The Auditor Has Refused To Place the Bond Levy on the 2025 Tax List and Duplicate for Collection in 2026

{¶ 11} In January 2023, the school district's treasurer communicated with the county auditor's office to confirm that the bond levy would remain on the tax list and duplicate for an additional six years (i.e., through tax year 2030, collection year 2031).  Then–County Auditor John Federer advised the school district that he would *not* place the bond levy on the tax list and duplicate for tax year 2025 (collection year 2026) onward.  After assuming office as Federer's successor, Auditor Hamilton confirmed to the school district that she would not place the bond levy on the tax list and duplicate for tax year 2025 onward.  According to the auditor, 2024 was the last year for the bond levy to be placed on the tax list and duplicate and 2025 is the last year for collection of taxes related to the bond issue.

{¶ 12} In her answer to the school district's mandamus complaint, the auditor asserts that "the ballot language for the May 2013 special election on the bond issue stated that the principal would be repaid annually over a maximum period of 12 years, and that collection for the levy cannot exceed 12 years under the ballot language and R.C. 133.19(B)(2)."  Since the bond levy was first placed on the tax list and duplicate in 2013 and first collected in 2014, the auditor contends that 2025 marks the 12th—and last—year of collection.

## E.  The School District Seeks a Writ of Mandamus

{¶ 13} The school district commenced this original action in October 2024.  It seeks a writ of mandamus ordering the auditor "to collect the bond levy approved by the voters . . . through collection year 2031."  The auditor filed an answer to the complaint and a motion for judgment on the pleadings, which the school district opposed.  This court denied the auditor's motion and granted an alternative writ, setting the schedule for the presentation of evidence and filing of briefs.  2025-Ohio-598.

## II. ANALYSIS

**{¶ 14}** To obtain a writ of mandamus, the school district must establish by clear and convincing evidence a clear legal right to the relief it requests, a clear legal duty on the part of the auditor to provide it, and the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Orange Twp. Bd. of Trustees v. Delaware Cty. Bd. of Elections*, 2013-Ohio-36, ¶ 14.

**{¶ 15}** The school district lacks an adequate remedy in the ordinary course of the law because even though it could pursue a declaratory-judgment action in common pleas court, such a judgment would not provide full relief unless coupled with a mandatory injunction compelling the auditor to place the bond levy on the tax list and duplicate. *See State ex rel. Nauth v. Dirham*, 2020-Ohio-4208, ¶ 12 ("When a mandatory injunction would be needed to obtain complete relief, a declaratory-judgment action is not an adequate remedy at law and mandamus is an appropriate remedy."). Whether the school district is entitled to a writ of mandamus thus turns on its ability to show that it has a clear legal right to the relief that it seeks and that the auditor has a clear legal duty to provide that relief.

### A. The Auditor as Respondent

**{¶ 16}** The auditor argues in her merit brief that we should deny the writ because she cannot provide the relief sought. In its prayer for relief, the school district asks for a writ of mandamus "compelling [the auditor] *to collect the bond levy* approved by the voters of the School District at the May 7, 2013 election through collection year 2031." (Emphasis added.) The auditor observes that the county treasurer, not the auditor, has the statutory duty to *collect* real-property taxes. *See* R.C. 5705.03(C); *see also State ex rel. Obetz v. Stinziano*, 2024-Ohio-5460, ¶ 6-8. And she argues that since she has no duty to collect property taxes, the school district has failed to state a claim for relief in mandamus against her.

**{¶ 17}** The auditor raised this same argument in her motion for judgment on the pleadings. We implicitly rejected the argument when we denied the auditor's

motion and granted an alternative writ, *see* 2025-Ohio-598, and we hereby reject it again.

{¶ 18} County auditors must annually compile a list of the real property in their county showing, among other things, the value of each piece of property. R.C. 319.28(B). "The auditor prepares the list in duplicate: the auditor's copy is the 'auditor's general tax list,' and the copy delivered by the auditor to the county treasurer is the 'general duplicate.' " *Obetz* at ¶ 6, quoting former R.C. 319.28(A) (now codified at R.C. 319.28(B)). The county auditor then "determine[s] the sums to be levied upon" each piece of real property based on information provided by authorized "officers and authorities." R.C. 19.30(A). "All taxes levied on property shall be extended on the tax list and duplicate by the county auditor of the county in which the property is located, and shall be *collected by the county treasurer* . . . ." (Emphasis added.) R.C. 5705.03(C). Thus, while the auditor prepares the tax list and duplicate, the treasurer is the county official responsible for collecting property taxes on each piece of real property listed on the duplicate. *See id.*

{¶ 19} Admittedly, the school district could have framed its request for relief more artfully. Nonetheless, the auditor's argument that she does not collect property taxes is unavailing. Under the statutory process for levying and collecting property taxes, the county treasurer's collection of the bond levy authorized by the voters in 2013 cannot occur until the county auditor places the bond levy on the tax list and duplicate for collection. *See* R.C. 133.18(H) and 319.30(A). And here, the auditor has stated that she will not place the levy on the tax list and duplicate for collection in 2026 or any year thereafter. Reading the complaint as a whole, we ascertain that the school district seeks a writ of mandamus ordering the auditor to place the bond levy approved by the voters in 2013 on the tax list and duplicate for collection from 2026 through 2031, as set forth in R.C. 133.18(H), which is a prerequisite to the treasurer's duty to collect the property tax.

## B. The Auditor's Ministerial Duty To Place the Bond Levy on the Tax List and Duplicate

{¶ 20} There is no dispute that voters approved a bond issue and tax levy in 2013, authorizing the school district to issue bonds in the principal amount of $13,995,500, to be repaid by collecting an annual property-tax levy. Based on the voters' approval of the bond issue, the school district argues that the auditor has a legal duty under R.C. 133.18(H) to place the bond levy on the tax list and duplicate for collection from 2026 through 2031. R.C. 133.18(H) provides:

> If a majority of the electors voting upon the question vote for it, the taxing authority of the subdivision may proceed under sections 133.21 to 133.33 of the Revised Code with the issuance of the [bonds] and with the levy and collection of a property tax outside the tax limitation during the period the [bonds] are outstanding sufficient in amount to pay the debt charges on the [bonds] . . . .  If legislation passed under section 133.22 or 133.23 of the Revised Code authorizing those [bonds] is filed with the county auditor on or before the last day of November, *the amount of the voted property tax levy required to pay debt charges or estimated debt charges on the* [bonds] *payable in the following year shall if requested by the taxing authority be included in the taxes levied for collection in the following year* under section 319.30 of the Revised Code.[3]

(Emphasis added.)

---

3. R.C. 319.30(A) provides: "After receiving from officers and authorities empowered to determine the rates or amounts of taxes to be levied for the various purposes authorized by law, statements of the rates and sums to be levied for the current year, the county auditor shall proceed to determine the sums to be levied upon each tract and lot of real property . . . ."

{¶ 21} There appears to be no dispute that the school district passed authorizing legislation by November 30 each year from 2013 through 2019, certifying the amounts needed to pay the debt charges on the Series 2013 bonds. And there likewise appears to be no dispute that the school district has passed authorizing legislation by November 30 each year since 2020, certifying the amounts needed to pay the debt charges on both the Series 2013 bonds and the Series 2019 bonds.[4] With these statutory requisites satisfied, the school district has a clear legal right to have the bond levy placed on the tax list and duplicate for collection in 2026. And the auditor has a corresponding statutory duty to place on the tax list and duplicate "the amount of the voted property tax levy," R.C. 133.18(H), required to pay the debt charges on the Series 2013 bonds and the Series 2019 bonds. *See also* R.C. 319.30.

{¶ 22} The auditor argues, however, that the maximum duration of the bond levy approved by voters in the May 2013 special election has expired. The auditor disagrees with the school district's interpretation of the statutes applicable to issuing bonds and collecting tax levies for repayment of the bonds' debt charges. Whereas the school district argues that the statutory scheme allows for the issuance of voter-approved bonds in separate 12-year installments (i.e., the Series 2013 bonds and the Series 2019 bonds) and for collecting tax levies during each 12-year maturity period, the auditor contends that there is only *one* 12-year period during which property taxes may be levied to pay back the bonds. We need not resolve this disagreement over the proper interpretation of R.C. Ch. 133, however, because the auditor does not have the authority to refuse to place the bond levy on the tax list and duplicate for tax year 2025 (collection year 2026).

_____

4. In an agreed statement of facts filed by the parties, they agree that the school district "certified to the County Auditor an amount needed to pay the debt charges" on the Series 2013 bonds and the Series 2019 bonds. The auditor does not argue that this means something other than the school district's having passed the "legislation" required by R.C. 133.18(H).

{¶ 23} Our decision in *State ex rel. Lorain v. Stewart*, 2008-Ohio-4062, is instructive. In *Stewart*, the City of Lorain's housing director certified 355 properties within community-reinvestment areas as qualifying for tax exemptions under R.C. 3735.65 to 3735.70. The Lorain County auditor, however, refused to place the properties on the county's tax-exempt-property list based on his determination that the tax exemption for those properties was improper. The city filed an action for a writ of mandamus, seeking to compel the auditor to place the properties at issue on the tax-exempt-property list. This court granted the writ, holding that the auditor had a statutory duty to enter on the tax-exempt-property list those properties that a city housing officer has certified as exempt under R.C. 3735.67. *Stewart* at ¶ 31, 60. The auditor's duty to place properties on the tax-exempt-property list was not conditioned on whether the housing officer's determination of exemption was proper. *Id.* at ¶ 31. The auditor did not have the statutory authority to refuse to perform his ministerial duty to place the properties on the tax-exempt-property list based solely on his belief that the properties were not exempt. *Id.* at ¶ 45.

{¶ 24} Though this case involves different statutes than those at issue in *Stewart*, the same principle applies. R.C. 133.18(H) says that the amount of a property-tax levy required to pay the debt charges on voter-approved bonds "shall . . . be included in the taxes levied for collection in the following year under [R.C. 319.30]," if the taxing authority (here, the school district) passes the appropriate legislation and files that legislation with the county auditor by November 30. The auditor has not cited any statute that allows her to refuse to perform the ministerial duty of placing the tax levy on the tax list and duplicate based on her belief that the bond levy has expired. *See Stewart* at ¶ 43; *see also Obetz*, 2024-Ohio-5460, at ¶ 31-40 (county auditor had statutory duty to distribute tax revenue to city without reduction even though auditor had determined that overpayments to the city had been made in previous years); *State ex rel. Donahey*

*v. Roose*, 90 Ohio St. 345, 350 (1914) (placement of levy on tax duplicate is "a mere ministerial duty" for which "the county auditor has no discretion").

{¶ 25} The school district in this case does not expressly argue that the auditor has no discretion to second-guess the school district's certification of the amount needed for collection under R.C. 133.18(H). The school district instead contends that as a matter of statutory interpretation, R.C. Ch. 133 allows the school district to do what it has done here—i.e., issue the principal amount of the bonds in two series, each with a maximum-maturity period of 12 years—and to have the bond levy placed on the tax list and duplicate for collection beyond 2025, so long as the bonds are outstanding. Accordingly, the school district argues that the auditor has a clear legal duty under R.C. 133.18(H) to place the bond levy on the tax list and duplicate for collection in 2026. On that decisive legal point, the school district is correct for the reasons previously stated. And because the auditor has no discretion to refuse to perform this ministerial duty, we need not make any determination of the issues raised by the parties concerning the proper interpretation of R.C. Ch. 133. *See Stewart* at ¶ 39.

{¶ 26} We do not, however, grant in this case the school district's requested relief beyond the bond levy's collection in 2026. The auditor does not have a duty to include the bond levy on the tax list and duplicate for collection until the school district has passed the legislation described in R.C. 133.18(H) authorizing the collection of taxes "in the following year." The auditor's duty in tax years beyond 2025 and collection years beyond 2026 will not be triggered until the school district has passed the legislation described in R.C. 133.18(H) for future tax years. *See State ex rel. Evans v. Tieman*, 2019-Ohio-2411, ¶ 16 (writ of mandamus will not issue to remedy the anticipated nonperformance of a duty).

## III. CONCLUSION

{¶ 27} For the foregoing reasons, we grant a limited writ of mandamus ordering the auditor to place the bond levy on the tax list and duplicate for tax year 2025, to be collected in 2026.

Limited writ granted.

_____

Bricker Graydon, L.L.P., Brodi J. Conover, Matthew L. Stout, and Ryan L. Richardson, for relator.

Daniel P. Driscoll, Clark County Prosecuting Attorney, and Andrew P. Pickering, Assistant Prosecuting Attorney, for respondent.

Squire Patton Boggs (US), L.L.P., Steven A. Friedman, Michael L. Sharb, and Ryan K. Callender, urging granting of the writ for amici curiae Ohio School Boards Association, Ohio Association of School Business Officials, and Buckeye Association of School Administrators.

_____