[This opinion has been published in *Ohio Official Reports* at 73 Ohio St.3d 568.]

WEST BAY MANOR COMPANY, APPELLANT, *v*. CUYAHOGA COUNTY BOARD OF

REVISION ET AL.; WESTLAKE BOARD OF EDUCATION, APPELLEE.

[Cite as *West Bay Manor Co. v. Cuyahoga Cty. Bd. of Revision*,

**1995-Ohio-334.**]

*Taxation—Property tax—Board of Tax Appeals' valuation of nursing home's certificate of need and determination of correct personal property deduction neither unreasonable nor unlawful, when.*

(No. 94-1462—Submitted March 30, 1995—Decided August 30, 1995.)

APPEAL from the Board of Tax Appeals, Nos. 92-X-1060 and 92-X-1061.

———————————

{¶ 1} West Bay Manor Company, appellant, owns and operates a 153-bed nursing home in Westlake, Ohio. The nursing home, built in 1980, is of two-story brick construction and contains a kitchen, dietary area, and administrative wing.

{¶ 2} The Cuyahoga County Auditor valued the property for tax year 1991 at $3,811,310. West Bay and the appellee, Westlake Board of Education ("Westlake Board"), each filed a complaint on this valuation with the Cuyahoga County Board of Revision ("BOR"). The BOR determined the true value of the property to be $4,100,000. West Bay appealed this decision to the Board of Tax Appeals ("BTA").

{¶ 3} At the BTA's hearing, West Bay called Paul D. Provencher to testify as an expert real estate appraiser on the value of the property. Appellees did not present any witnesses at the BTA hearing, but did offer evidence at the BOR, which the BOR included in the statutory transcript it filed with the BTA. Provencher testified that the overall value estimate, or going-concern value, of the property was $5,200,000. However, he deducted $1,530,000, which he described as the value of the Certificate of Need ("CON") license that West Bay needs in order to operate,

and $230,000 for personal property included in the going-concern value. Thus, he concluded the real estate was worth $3,440,000.

{¶ 4} Provencher decided that the CON license was worth $10,000 per bed. He based this conclusion on nine sales of nursing home CON's that he listed in his report. The sales ranged in price from $754 to $17,000 per bed. The second lowest price was $8,333 per bed. He testified, under cross-examination, that the total $10,000 value represented in part the CON value and in part goodwill value. Provencher's report, however, did not make any reference to goodwill as a separate valuated item.

{¶ 5} As to the personal property, he surmised that the deduction should be $1,500 per bed. He had no data to support this amount, basing his decision on his experience. On cross-examination, appellees pointed out that West Bay reported a value of approximately $65,000 for its personal property in its return for tax year 1991 filed with the county auditor.

{¶ 6} The BTA, in reviewing Provencher's report, criticized it for its subjective nature. The BTA was particularly critical of his opinion that the CON license was worth $10,000 per bed. The BTA noted that it had determined a value of $5,000 per bed in *Royalview Manor v. Cuyahoga Cty. Bd. of Revision* (Mar. 12, 1993), BTA No. 91-B-349, unreported, involving tax year 1988, and $6,000 per bed in *Minerva Convalescent Ctr., Inc. v. Stark Cty. Bd. of Revision* (Apr. 15, 1994), BTA No. 92-A-39, unreported, for tax year 1990. It then stated its belief that "a more reasonable value for a CON in this instance is $6,000 [per bed]."

{¶ 7} The BTA also decided that the correct personal property deduction was $65,000, as West Bay had reported to the county auditor.

{¶ 8} The BTA then adjusted Provencher's value, and such value, according to the BTA, "essentially confirms the values already found by the BOR." The BTA then found that West Bay had failed to sustain its burden of proving it should

2

receive a reduction in value. The BTA found the value of the subject property to be $4,100,000.

{¶ 9} This cause is now before this court upon an appeal as a matter of right.

_____

*Fred Siegel Co., L.P.A.,* and *Annrita S. Johnson* for appellant.

*Rosenzweig, Schulz & Gillombardo*, and *Bill J. Gagliano*, for appellee.

_____

**Per Curiam.**

{¶ 10} West Bay challenges the BTA's findings on the CON and personal property deductions. In both instances, West Bay contends that the record does not support the BTA's findings. We disagree with West Bay.

{¶ 11} "We will not overrule BTA findings of fact that are based upon sufficient probative evidence*." R.R.Z. Assoc. v. Cuyahoga Cty. Bd. of Revision* (1988), 38 Ohio St.3d 198, 201, 527 N.E. 2d 874, 877.

{¶ 12} We note that "[t]he BTA is not required to adopt the valuation fixed by any witness, and it is vested with wide discretion to determine the weight to be given to evidence and the credibility of witnesses before it." *Mentor Exempted Village Bd. of Edn. v. Lake Cty. Bd. of Revision* (1988), 37 Ohio St.3d 318, 319, 526 N.E.2d 64, 65. We have said repeatedly that "[a]ppellant had the duty to prove its right to a reduction in value." *R.R.Z.* at 202, 527 N.E.2d at 878. See, also, *Ohio Region Senior Citizens Hous. Corp. v. Franklin Cty. Bd. of Revision* (1994), 68 Ohio St.3d 489, 491, 628 N.E.2d 1362, 1364; *Crow v. Cuyahoga Cty. Bd. of Revision* (1990), 50 Ohio St.3d 55, 57, 552 N.E.2d 892, 893; and *Zindle v. Summit Cty. Bd. of Revision* (1989), 44 Ohio St.3d, 202, 203, 542 N.E.2d 650, 651.

{¶ 13} In this case, West Bay Manor had the duty to prove its right to a reduction in value. In determining the CON deduction, the BTA rejected Provencher's conclusion on the CON valuation as too subjective and discounted his testimony because he lacked credibility.

**{¶ 14}** At the hearing, Provencher took the position that the $10,000 valuation was allocable in part to the CON and in part to goodwill, but he did not say how much went to which part. The BTA, also, found that Provencher did not properly explain the goodwill component because he "displayed an ignorance of the licensing of nursing homes, in general." Further, in a prior appraisal of a different nursing home in the same city and for the same tax year as West Bay Manor's, Provencher opined that the CON value was $5,000 per bed. Finally, we note that the BTA's conclusion of $6,000 per bed fell within the range supplied by Provencher.

**{¶ 15}** For the foregoing reasons, we do not find the BTA's valuation of the CON based on $6,000 per bed unlawful or unreasonable.

**{¶ 16}** As to the personal property deduction, the only evidence of the deduction claimed by West Bay is Provencher's testimony, which he did not support with any data. The BTA did not believe this testimony, and the BTA has wide discretion to grant or deny credibility to witnesses. "Absent a showing of an abuse of that discretion, the BTA's determination as to the credibility of witnesses and the weight to be given their testimony will not be reversed by this court." *Witt Co. v. Hamilton Cty. Bd. of Revision* (1991), 61 Ohio St.3d 155, 157, 573 N.E.2d 661, 663. We find no showing of an abuse of discretion by the BTA in disbelieving Provencher on this point.

**{¶ 17}** The decision of the Board of Tax Appeals is neither unreasonable nor unlawful and it is affirmed.

*Decision affirmed.*

MOYER, C.J., DOUGLAS, WRIGHT, RESNICK, F.E. SWEENEY, PFEIFER and COOK, JJ., concur.

_____