[This opinion has been published in *Ohio Official Reports* at 74 Ohio St.3d 547.]

WESTLAKE MEDICAL INVESTORS, L.P., APPELLANT, *v.* CUYAHOGA COUNTY

BOARD OF REVISION ET AL., APPELLEES.

[Cite as *Westlake Med. Investors, L.P. v. Cuyahoga Cty. Bd. of Revision*,

1996-Ohio-288.]

*Taxation—Real property—Valuation of nursing home—Board of Tax Appeals*
*does not abuse its discretion in disregarding real estate appraisal expert's*
*report and opinion of value, when.*

(No. 95-444—Submitted November 9, 1995—Decided February 14, 1996.)

APPEAL from the Board of Tax Appeals, No. 93-J-766.

_____

{¶ 1} Westlake Medical Investors, L.P. ("Medical Investors"), appellant, owns and operates the Oakridge Nursing Home in Westlake. Medical Investors purchased this property in 1986 for $3,360,000. It has since paid $380,000 to improve the property.

{¶ 2} Oakridge is a one-hundred-nineteen-bed nursing home located on Center Ridge Road. It is a one-story building of brick construction containing 26,679 square feet. It was originally erected in 1958 and underwent an addition in 1971.

{¶ 3} Medical Investors filed a complaint with the Cuyahoga County Board of Revision ("BOR"), appellee, contesting the Cuyahoga County Auditor's valuation for the property at $3,879,600 for tax year 1991. The Westlake Board of Education ("BOE"), appellee, filed a counter-complaint. Medical Investors maintained at the BOR hearing that the true value in money of the property was $2,110,000; the BOE claimed the value to be $4,000,000. Nevertheless, the BOR determined the true value to be $3,700,000.

**{¶ 4}** Medical Investors appealed this decision to the Board of Tax Appeals ("BTA"). Medical Investors presented the testimony of Paul D. Provencher, a real estate appraisal expert, who testified as to the $2,110,000 true value. The BOE did not present any appraisal testimony.

**{¶ 5}** In any event, the BTA rejected Provencher's report and approved the determination made by the BOR. The BTA questioned the quantity of comparable sales that Provencher had included in his report. It compared the amount of comparable sales with the greater amount contained in another report he had prepared for West Bay Manor Company, see *W. Bay Manor Co. v. Cuyahoga Cty. Bd. of Revision* (1995), 73 Ohio St.3d 568, 653 N.E.2d 379, another nursing home in Westlake for the same tax year. The BTA also challenged Provencher's income approach because his estimate of revenue for 1989 through 1991 fell short of the actual growth pattern in Medical Investors's actual revenues. The BTA also concluded that his capitalization rate of 14.78 percent contradicted the rate he had selected in the *West Bay Manor* appraisal, despite selecting the same supportive data for both reports.

**{¶ 6}** As to the cost approach, the BTA noted that, using the same land sales, he determined value of $44,625 per acre for the subject property, but $125,000 per acre in the *West Bay Manor* appraisal. Finally, the BTA doubted his selection of amounts for personal property and certificate of need deductions. At bottom, the BTA found "that the estimates made by [Provencher] appear to be highly subjective which serve to lower the value of the property. We therefore find his appraisal is unpersuasive, and is not a reliable indicator of the property's value on tax lien date. We accordingly decline to fix value in accordance with it.

**{¶ 7}** "In addition, we find that the evidence supports the Board of Revision's value of $3,700,000. The appellant purchased the property in 1986 for $3,360,000, and $380,000 of subsequent real property improvements were made.

These figures support the findings of the Board of Revision and have been unrefuted herein."

**{¶ 8}** Consequently, the BTA determined the true value of the property to be $3,700,000 as of January 1, 1991.

**{¶ 9}** This cause is now before this court upon an appeal as of right.

_____

*Todd W. Sleggs*, for appellant.

*Rosenzweig, Schulz & Gillombardo Co., L.P.A.,* and *Bill J. Gagliano*, for appellee Westlake Board of Education.

_____

***Per Curiam.***

**{¶ 10}** Medical Investors principally argues that the BTA should have deducted amounts for the nonrealty items of the state-issued certificate of need, goodwill, and tangible personal property. We disagree.

**{¶ 11}** A taxpayer has the duty to prove his right to a reduction in value. *Zindle v. Summit Cty. Bd. of Revision* (1989), 44 Ohio St.3d 202, 203, 542 N.E.2d 650, 651. The BTA stated its reasons for why it did not believe Provencher's testimony, and the record supports its findings as to Provencher's testimony. We do not find that the BTA abused its discretion in discrediting his report and opinion of value.

**{¶ 12}** Furthermore, the BTA may approve a board of revision's value if the taxpayer does not prove a right to a reduction in value. *Cleveland Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision* (1994), 68 Ohio St.3d 336, 626 N.E.2d 933. Moreover, the circumstances of the 1986 sale of the subject property lend support to the BTA's conclusion. Medical Investors paid $3,560,000 to the seller, but Medical Investors attributed $3,360,000 to the real estate. Thus, it deducted $200,000 for nonrealty property from the purchase price. Furthermore, it paid $380,000 to improve the property. The total, $3,740,000, comes very close to the

value decided by the BOR and the BTA. In light of the BTA's criticism of Provencher's total methodology, the BTA properly decided that the true value of the property, as of January 1, 1991, was $3,700,000.

*Decision affirmed.*

MOYER, C.J., DOUGLAS, WRIGHT, RESNICK, F.E. SWEENEY, PFEIFER and COOK, JJ., concur.

————————————