[Cite as *Jai Shree Ganesh, L.L.C. v. Athens Cty. Bd. of Revision*, 2025-Ohio-4692.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ATHENS COUNTY

JAI SHREE GANESH LLC,             :
 (et al.),
                          :

                       Appellant(s)-Appellant,    Case No. 24CA24
                          :
                       v.
                          :
ATHENS COUNTY BOARD OF
 REVISION, (et al.),                :    DECISION AND
                                JUDGMENT ENTRY

       Appellee(s)-Appellees.   :

_____

APPEARANCES:

Karen H. Bauernschmidt and Kelly W. Bauernschmidt, Mayfield Village, Ohio, for appellant.

Carly M. Sherman, Dayton, Ohio, for appellee Federal Hocking Local Schools Board of Education.[1]

_____

CIVIL APPEAL FROM THE OHIO BOARD OF TAX APPEALS
DATE JOURNALIZED:10-6-25
ABELE, J.

{¶1} This is an appeal from a decision of the Ohio Board of Tax Appeals (BTA) that valued real property owned by Jai Shree Ganesh LLC, appellant herein. Appellant assigns the following

_____

[1] R.C. 5717.04 states that "all persons to whom the decision of the board appealed from is required by such section to be sent, other than the appellant, shall be made appellees." In the case at bar, only one of the appellees, Federal Hocking Local Schools Board of Education, has entered an appearance.

errors for review:

FIRST ASSIGNMENT OF ERROR:

"THE DECISION OF THE BTA IS UNREASONABLE AND UNLAWFUL BECAUSE THE BTA INCORRECTLY FOUND THAT THE SNYDER APPRAISAL WAS NOT THE BEST AND THE MOST PROBATIVE EVIDENCE OF VALUE FOR THE COVID 2020 TAX YEAR."

SECOND ASSIGNMENT OF ERROR:

"THE DECISION OF THE BTA IS UNREASONABLE AND UNLAWFUL SINCE IT RELIED ON A 2019 PRE-COVID SALE TO VALUE THE SUBJECT HOTEL AS OF OCTOBER 1, 2020, IN CONTRAVENTION OF THE EVIDENCE IN THE RECORD."

THIRD ASSIGNMENT OF ERROR:

"THE DECISION OF THE BTA IS UNREASONABLE AND UNLAWFUL SINCE IT CREATED A HIGHER STANDARD OF REVIEW AND BURDEN OF PROOF FOR A PROPERTY OWNER IN A COVID COMPLAINT."

FOURTH ASSIGNMENT OF ERROR:

"THE BTA'S RELIANCE ON *MICHAEL'S INC. V. LAKE CTY. BD. OF REVISION*, BTA NO. 2022-14, 2023 OHIO TAX LEXIS 501 (MAR. 20, 2023) IS MISPLACED WHEN THE MICHAEL'S APPRAISAL EVIDENCE WAS A FINANCING APPRAISAL, WITHOUT A COVID VALUATION DATE AND NOT TESTIFIED OR AUTHENTICATED BY THE APPRAISER AND EXCLUDED AS EVIDENCE BASED UPON HEARSAY."

FIFTH ASSIGNMENT OF ERROR:

"THE DECISION OF THE BTA IS UNREASONABLE AND UNLAWFUL WHEN IT REQUIRES THE PROPERTY OWNER'S APPRAISER TO CREATE TWO VALUES-ONE AS OF JANUARY 1, 2020, AND ONE AS OF OCTOBER

1, 2020, TO PROVE THE IMPACT OF COVID ON A HOTEL."

SIXTH ASSIGNMENT OF ERROR:

"THE DECISION OF THE BTA IS UNREASONABLE AND UNLAWFUL WHEN IT FAILED TO PROPERLY CONSIDER THE PROPERTY OWNERS [SIC] TESTIMONY AT THE BOARD OF REVISION, WHICH WAS UNDER OATH, AND DEMONSTRATED THE FINANCIAL IMPACT OF COVID ON THEIR HOTEL."

SEVENTH ASSIGNMENT OF ERROR:

"THE DECISION [OF] THE BTA IS UNREASONABLE AND UNLAWFUL, FOR IT FAILED TO RECOGNIZE THE IMPACT OF COVID IN THE HOTEL INDUSTRY."

EIGHTH ASSIGNMENT OF ERROR:

"THE DECISION OF THE BTA IS UNREASONABLE AND UNLAWFUL BECAUSE THE BTA INCORRECTLY FOUND THAT [APPELLANT] FAILED TO PROVIDE PROBATIVE AND CREDIBLE EVIDENCE AS TO THE IMPACT OF COVID ON THEIR HOTEL AND THE VALUE OF THE HOTEL AS OF OCTOBER 1, 2020."

NINTH ASSIGNMENT OF ERROR:

"THE DECISION OF THE BTA IS UNREASONABLE AND UNLAWFUL SINCE IT RELIED ON A PRE-COVID SALE TO VALUE THE SUBJECT PROPERTY AS OF OCTOBER 1, 2020 WHEN THE EVIDENCE IN THE RECORD DEMONSTRATED THAT THE 2020 COVID NET INCOME WAS SUBSTANTIALLY LOWER THA[N] THE NET INCOME THAT THE PROPERTY WAS ACQUIRED ON IN 2019 AS PROVIDED BY THE PROPERTY OWNERS AT THE BOR AND AS SET FORTH IN THE BROKER'S OFFERING MEMORANDUM FOR THE SUBJECT PROPERTY."

TENTH ASSIGNMENT OF ERROR:

"THE DECISION OF THE BTA IS UNREASONABLE AND UNLAWFUL SINCE THE BTA FAILED TO CONSIDER THAT THE REVENUE IN SNYDER'S INCOME APPROACH FOR COVID 2020 WAS 'STABILIZED' AS REQUIRED BY THE BTA IN THE INCOME APPROACH."

ELEVENTH ASSIGNMENT OF ERROR:

"THE DECISION OF THE BTA IS UNREASONABLE AND UNLAWFUL SINCE IT FAILED TO CONSIDER ALL SOURCES THAT APPRAISER SNYDER UTILIZED TO DETERMINE REVENUE."

TWELFTH ASSIGNMENT OF ERROR:

"THE DECISION OF THE BTA IS UNREASONABLE AND UNLAWFUL WHEN IT DETERMINED THAT THE BOR ERRED IN CHANGING THE VALUE FOR COVID 2020."

THIRTEENTH ASSIGNMENT OF ERROR:

"THE DECISION OF THE BTA IS UNREASONABLE AND UNLAWFUL WHEN THE BTA DETERMINED THAT A PROPERTY OWNER OF A HOTEL CANNOT PROVE THE IMPACT OF COVID ON A HOTEL BASED UPON THE LACK OF OCCUPANCY, DROP IN ADR AND REVENUE."

FOURTEENTH ASSIGNMENT OF ERROR:

"THE DECISION OF THE BTA IS UNREASONABLE AND UNLAWFUL WHEN IT DETERMINED THAT THEIR REVIEW OF THE SNYDER APPRAISAL MUST SHOW THE DECREASE IN VALUE FROM JANUARY 1, 2020, TO OCTOBER 1, 2020."

FIFTEENTH ASSIGNMENT OF ERROR:

"THE DECISION OF THE BTA IS UNREASONABLE AND UNLAWFUL WHEN IT DETERMINED THAT THEIR REVIEW MUST DETERMINE WHETHER THE COVID DATED APPRAISAL IS MORE PERSUASIVE THAN THE PRE-COVID SALE."

SIXTEENTH ASSIGNMENT OF ERROR:

"THE DECISION OF THE BTA IS UNREASONABLE
[AND] UNLAWFUL WHEN IT MISCONSTRUED THE
TESTIMONY OF APPRAISER SNYDER IN ITS
DECISION."

SEVENTEENTH ASSIGNMENT OF ERROR:
"THE DECISION OF THE BTA IS UNREASONABLE AND
UNLAWFUL SINCE IT FAILED TO CONSIDER
SNYDER'S ANALYSIS IN THE INCOME APPROACH BUT
RATHER STATED IT WAS I AND E."

EIGHTEENTH ASSIGNMENT OF ERROR:

"THE DECISION OF THE BTA IS UNREASONABLE AND
UNLAWFUL SINCE THE BTA FAILED TO CONSIDER
THAT [SIC] ADJUSTMENTS TO THE SALES FOR
COVID AND THE CAPITALIZATION RATES FOR
COVID."

NINETEENTH ASSIGNMENT OF ERROR:

"THE BTA DECISION IS UNREASONABLE AND
UNLAWFUL WHEN IT MISCHARACTERIZES
SNYDER'S INCOME APPROACH AS BEING SIMILAR TO
A DISCOUNTED CASH FLOW ANALYSIS SO THAT THE
BTA COULD BLANKETLY [SIC] DISREGARD SNYDER'S
INCOME APPROACH."

TWENTIETH ASSIGNMENT OF ERROR:

"THE DECISION OF THE BTA IS UNREASONABLE AND
UNLAWFUL SINCE THE FINDINGS OF FACT AND
CONCLUSIONS OF LAW ARE AGAINST THE MANIFEST
WEIGHT OF THE EVIDENCE."

{¶2} In July 2019, appellant purchased a 53-room hotel for $2,350,000. For the tax year 2020, the auditor valued the

property at $2,216,130.

**{¶3}** On August 25, 2021, appellant filed a "Special COVID-19 Related Complaint Against the Valuation of Real Property," in accordance with Section 3 of Substitute Senate Bill 57 (S.B. 57), effective August 3, 2021. Appellant's complaint requested a reduction in value from $2,216,130 to $700,000. The complaint alleged that "COVID caused a decline in Occupancy and Revenues," which reduced the value of the property. The Federal Hocking Local Schools Board of Education, appellee herein, filed a counter complaint that sought to retain the auditor's valuation.

**{¶4}** On October 28, 2021, the Athens County Board of Revision (BOR) held a hearing to consider appellant's complaint. At the hearing, appellant's representatives, Bhavik and Keyur Patel, testified that in July 2019, appellant purchased the hotel property for $2,350,000, based upon expected annual gross revenue of $700,000. The hotel's gross revenue for the six-month period ending in December 2019, was approximately $400,000. In 2020, COVID caused a decline in occupancy, and the hotel generated approximately $366,000 in gross revenue. The Patels stated that if they "were to buy this hotel now, first of all, [they] wouldn't buy it, and definitely not at the price that [they] paid for it."

{¶5} The BOR concluded that COVID affected the value of the property and reduced the valuation to $1,772,900. Appellant appealed the BOR's decision to the BTA.

{¶6} On November 29, 2022, the BTA held a hearing. At the hearing, appellant submitted the testimony of an appraiser, Charles G. Snyder, and introduced his appraisal into evidence. Snyder testified that he appraised the property at $1,068,000 as of October 1, 2020. Snyder explained that to value the property, he used "the sales comparison and income capitalization approaches."

{¶7} For the sales comparison approach, Snyder indicated that he considered four comparable sales that had unadjusted sale prices ranging from $14,658 to $36,537 per room. Snyder then "adjusted the sales based on condition, age, location, pool/amenities, and market conditions." His adjustments ranged from a downward adjustment of 20 percent to an upward adjustment of 45 percent. Based on the adjustments, Snyder opined that the adjusted price for appellant's property was $26,000 per room, for a total value of $1,378,000.

{¶8} Snyder next explained his income capitalization approach. Snyder stated that he "used information from the

Smith Travel Star Report concerning seven hotels in the competitive market and profit and loss statements for the subject [property] from 2019 through 2020." The profit and loss statements indicated that, in 2020, the property's total revenue was $366,213, and for the six months during 2019, when appellant owned the property, total revenue was $436,921.

{¶9} Snyder indicated that the travel report showed that, in 2019 and 2020, appellant's property "fared far worse than anything else in the competitive set top to bottom." Snyder included a copy of the travel report in his written appraisal. This report showed that in the 12-month period ending in December 2019, appellant's property had an occupancy rate of 38.3 percent, and the competitive set had an occupancy rate of 55.3 percent. In the 12-month period ending in December 2020, appellant's property had an occupancy rate of 23 percent, and the competitive set had an occupancy rate of 43.4 percent. Snyder testified that occupancy "was bad in 2019 at 38.3 percent, but it almost fell off the charts at 23 percent in 2020." Snyder related that, "as an appraiser when you look at [these numbers], you go we have got a mess."

{¶10} Snyder further stated that the hotel's average daily room rate (ADR) "declined precipitously from 2019 to 2020." The

travel report indicated that appellant's ADR was $96.19 for the 12-month period ending in December 2019, and $69.93 for the 12-month period ending in December 2020.  The competitive set's 2019 ADR was $96.57, and its 2020 ADR was $78.37.

**{¶11}** The travel report also listed the 2019 and 2020 revenue per available room (RevPar) for appellant's property and the competitive set.  For the 12-month period ending in December 2019, appellant's RevPar was $36.81, and the competitive set's RevPar was $53.41.  The same period ending in December 2020 showed that appellant's RevPar had dropped to $16.10, and the competitive set's RevPar dropped to $34.01.

**{¶12}** Snyder prepared an analysis that projected gross revenue, average daily room rates, and occupancy for 2021-2024. Snyder concluded that the hotel would generate a net operating income of $188,521.  Snyder determined that the pre-COVID-19 capitalization rate would have been 11 percent.  Snyder's appraisal report stated that his discussions "with market participants indicates a load for risk of 20 to 30 percent."  He thus loaded the base rate with a 25 percent risk factor and obtained a COVID-19 "reflected rate of 13.75 percent."  Snyder testified that he decided to use the 25 percent risk factor

after discussions with "numerous clients."  Snyder also included a tax additur that resulted in an adjusted overall rate of 15.56 percent.  After performing the calculations, Snyder concluded that the property's October 1, 2020 value was $1,068,000.

{¶13} When asked if appellant's property was "a riskier investment as of October 1, 2020, as compared to the competitive set of other motels in the area," Snyder responded, "Evidenced by the travel report, yes, because it's at the bottom of the tier on occupancy and ADR . . . ."  He agreed with the statement that the property was "woefully under performing" in 2019 as compared to the competitive set and that, in 2020, the property "also performs negatively compared to the competitive [set] but worse than 2019."  When asked to explain the difference between the 2019 and 2020 numbers, Snyder stated that he "would glean that it's COVID related."

{¶14} Snyder also discussed the general characteristics of the property and noted that the hotel "is the furthest east of any lodging facility in the Athens city area."  Snyder's appraisal pointed out that appellant's property, "perhaps due to locational characteristics[,] has a difference of 17 percent between the competitive set and the subject in running 12 months 2019, pre-COVID effects on the hospitality industry."  He stated

that other hotels are located "closer in near the traditional State Street service corridor leading up into Athens."  Snyder additionally indicated that the hotel's breakfast area is "a little deficient."

{¶15} On July 24, 2024, the BTA set the true value of appellant's property at $2,350,000, the same amount as the July 2019 sale price.  The BTA determined that the BOR erred by changing the value of the property.  The BTA stated that appellant "did not present probative evidence of value and did not show any diminution in value stemmed from the pandemic." The BTA found that "appellant's general arguments about a decrease in value due to the loss of income and increased vacancy are not probative of the property's true value."  The BTA instead determined that the 2019 sale price was probative of the property's true value.

{¶16} The BTA noted that it was not obligated to accept the appraiser's opinion, and it did not, in fact, accept Snyder's opinion.  The BTA did not find Snyder's appraisal to be more persuasive evidence of value than the sale price.  The BTA instead found that "[t]he primary theme of Snyder's appraisal was that the property was never doing well, even before COVID."

The BTA also determined that Snyder's appraisal did "not describe how the subject's value specifically changed from January 1 to October 1, 2020, due to COVID, which is the crux of a COVID complaint case."

{¶17} The BTA further pointed out that the profit and loss statements that Snyder reviewed did not show monthly amounts, only yearly amounts.  The BTA stated that "merely filing a list of financial statements that show actual income versus expenses does not necessarily reflect the market, and doing so is similar to filing a list of defects about a subject property."

{¶18} The BTA additionally questioned Snyder's "large property adjustments for location, condition, and age" and found his "capitalization rate" to be "unsupported."  The BTA observed that Snyder stated that he had determined that the 25 percent risk factor "was appropriate from discussions with market participants but did not explain how he determined that number to be accurate."

{¶19} The BTA thus determined that the 2019 sale price was "more probative of value than Snyder's appraisal" and set the property's true value at $2,350,000.  This appeal followed.

I

{¶20} We initially note that appellant did not separately argue its 20 assignments of error. Instead, the argument section of appellant's brief contains three "propositions of law," and various assignments of errors are listed beneath each proposition of law.[2]

---

[2] The first proposition of law states:

In Ohio real property is valued in accord with R.C. 5713.03, which is true value (fair market value) in fee simple but subject to the effects and exercise of police powers of governmental actions. R.C. 5713.03 does not require the use of a sale. SB and COVID order was the exercise of police power by the State of Ohio, which was the intervening event that negated use of a July 201[9] pre-COVID sale to set a value for October 1, 2020 under R.C. 5713.03.

Beneath this proposition of law, appellant lists assignments of error two, six, seven, nine, ten, twelve, thirteen, and fifteen.

Appellant's second proposition of law states:

Under Ohio Senate Bill 57 the standard of review and burden of proof to prove the impact of COVID on a subject property requires competent and probative evidence of a different value as of October 1, 2020.

Beneath this proposition of law, appellant lists assignments of error three, four, five, seven, eight, ten, twelve, thirteen, fourteen, and fifteen.

Appellant's third proposition of law states:

The decision is unreasonable and unlawful since the property owner presented probative and competent evidence that the 2020 COVID value was consistent with the Snyder appraisal, which properly value[d] the Jai Shree hotel as of October 1, 2020, in fee simple.

Beneath this proposition of law, appellant lists assignments of error one, eight, ten, eleven, thirteen, sixteen, seventeen, eighteen, nineteen, and twenty.

{¶21} The appellate rules require us to "[d]etermine the appeal on its merits on the assignments of error set forth in the briefs under App.R. 16." App.R. 12(A)(1). In turn, App.R. 16(A)(7) requires an appellant's brief to include "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies." App.R. 12(A)(2) permits us to "disregard an assignment of error presented for review if the party raising it . . . fails to argue the assignment separately in the brief, as required under App.R. 16(A)."

{¶22} Thus, given appellant's failure to argue each assignment separately in the brief, we would be well within our discretionary authority to summarily overrule appellant's assignments of error and affirm the BTA's decision. *See Mtge. Electronic Registrations Sys. v. Mullins*, 2005-Ohio-2303, ¶ 22 (4th Dist.). We generally prefer, however, to decide cases on their merits rather than procedural technicalities. *See DCI Rentals, LLC v. Sammons*, 2024-Ohio-1962, ¶ 7, fn. 2 (4th Dist.); *see also Barksdale v. Van's Auto Sales, Inc.,* 38 Ohio St.3d 127, 128 (1988) (noting that a "basic tenet of Ohio jurisprudence

[is] that cases should be determined on their merits and not on mere procedural technicalities"). We will therefore address appellant's assignments of error to the extent that a cogent argument supports them.

{¶23} We additionally note that all of the assignments of error appear to essentially argue that the BTA's decision is unreasonable and unlawful. For ease of analysis, we review the assignments of error together.

II

{¶24} In its 20 assignments of error, appellant asserts that the BTA decision is unreasonable and unlawful for a multitude of reasons. One primary complaint across multiple assignments of error is that BTA's decision is unreasonable and unlawful because the BTA wrongly discredited, or misinterpreted, appellant's evidence. Appellant claims that it presented probative and credible evidence that circumstances related to the COVID-19 pandemic diminished the property's true value. Appellant charges that the BTA considered only the recentness of the July 2019 sale and did not consider any other factors.

{¶25} Appellant also contends that the BTA decision is unreasonable and unlawful because the BTA applied an incorrect

standard when it reviewed its COVID complaint.  Appellant claims that the BTA required it to establish two values—one as of January 1, 2020, and one as of October 1, 2020—in order to support a reduction in value.  Appellant states that the standard that the BTA applied in its case was that the appraisal "must 'accurately show[s] [sic] a decrease in value between January 1 and October 1, 2020.'"  Appellant asserts that in "three other BTA COVID hotel cases," the BTA "only required the Property Owners to find, 'a different value as of October 1, 2020.'"  Appellant thus argues that BTA's decision to apply different standards to the same class of cases warrants a reversal.

A

**{¶26}** In general, appellate courts will affirm the BTA's decision if the decision "is reasonable and lawful."  R.C. 5717.04; *accord Obetz v. McClain*, 2021-Ohio-1706, ¶ 14, citing *Grace Cathedral, Inc. v. Testa*, 2015-Ohio-2067, ¶ 16.  The BTA's decision is reasonable and lawful if reliable and probative evidence supports the BTA's findings of fact.  *See HCP EMOH, L.L.C. v. Washington Cty. Bd. of Revision*, 2018-Ohio-4750, ¶ 21, citing *Polaris Amphitheater Concerts, Inc. v. Delaware Cty. Bd. of Revision*, 2008-Ohio-2454, ¶ 18.

**{¶27}** On the other hand, if the BTA's decision "is unreasonable or unlawful," then a reviewing court will "reverse and vacate the decision or modify it and enter final judgment in accordance with such modification."  R.C. 5717.04.  A decision is unreasonable and unlawful "if the record does not support, or if it contradicts, the BTA's findings."  *Polaris Amphitheater*, 2008-Ohio-2454, at ¶ 18.

**{¶28}** When evaluating whether the BTA's decision is reasonable and lawful, courts apply a de novo standard of review to questions of law.  *See Obetz*, 2021-Ohio-1706, at ¶ 14, citing *Crown Communication, Inc. v. Testa*, 2013-Ohio-3126, ¶ 16.  Courts that are reviewing a BTA decision do not, however, "sit as 'a super BTA or a trier of fact de novo.'"  *RNG Properties, Ltd. v. Summit Cty. Bd. of Revision,* 2014-Ohio-4036, ¶ 18, quoting *EOP–BP Tower, L.L.C. v. Cuyahoga Cty. Bd. of Revision,* 2005-Ohio-3096, ¶ 17; *accord Westerville City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 2016-Ohio-1506, ¶ 26.  A reviewing court thus does not "reevaluate the evidence" that the BTA considered or "substitute [its] judgment on factual issues for that of the [BTA]."  *Health Care REIT, Inc. v. Cuyahoga Cty. Bd. of Revision*, 2014-Ohio-2574, ¶ 53, quoting *Citizens Fin.*

*Corp. v. Porterfield,* 25 Ohio St.2d 53, 57 (1971). Instead, a reviewing court applies a "heavy measure of deference" and "must defer to the BTA's decision as long as it is lawful and supported by the record." *Health Care REIT, Inc. v. Cuyahoga Cty. Bd. of Revision*, 2014-Ohio-2574, ¶ 53, citing *Throckmorton v. Hamilton Cty. Bd. of Revision,* 75 Ohio St.3d 227, 229 (1996).

{¶29} Furthermore, the "weighing of evidence and granting of credibility is exactly the BTA's statutory job." *Fawn Lake Apts. v. Cuyahoga Cty. Bd. of Revision*, 75 Ohio St.3d 601, 603 (1996); *accord EOP-BP Tower*, 2005-Ohio-3096, at ¶ 9. Thus, the BTA "'is vested with wide discretion in determining the weight to be given to evidence and the credulity of witnesses which come before [it].'" *Moskowitz v. Cuyahoga Cty. Bd. of Revision*, 2017-Ohio-4002, ¶ 12, quoting *Cardinal Fed. S. & L. Assn. v. Cuyahoga Cty. Bd. of Revision,* 44 Ohio St.2d 13 (1975), paragraph three of the syllabus. Accordingly, a court that is reviewing a BTA decision will not disturb the BTA's determination of the credibility of witnesses and its weighing of the evidence, unless the BTA abused its discretion. *See Obetz*, 2021-Ohio-1706, at ¶ 14. The BTA abuses its discretion if the record displays an "'"attitude [that] is unreasonable, arbitrary or unconscionable."'" *Columbus City Schools Bd. of*

*Education v. Franklin Cty. Bd. of Revision*, 2020-Ohio-353, ¶ 19, quoting *J.M. Smucker, L.L.C. v. Levin,* 2007-Ohio-2073, ¶ 16, quoting *Strongsville Bd. of Edn. v. Zaino,* 92 Ohio St.3d 488, 490 (2001).

**{¶30}** The appellant bears the burden to demonstrate that the BTA's attitude was unreasonable, arbitrary, or unconscionable. *Columbus City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 2016-Ohio-7466, ¶ 20, citing *EOP-BP Tower*, 2005-Ohio-3096, at ¶ 14, citing *Witt Co. v. Hamilton Cty. Bd. of Revision,* 61 Ohio St.3d 155, 157 (1991).  "'A decision is unreasonable if there is no sound reasoning process that would support that decision.'"  *Adams v. Harris*, 2024-Ohio-4640, ¶ 50, quoting *AAAA Ents., Inc. v. River Place Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161 (1990).  An arbitrary decision is one made "'"without [an] adequate determining principle; . . . not governed by any fixed rules or standard."'"  (Ellipsis added in original.)  *Id.*, quoting *Dayton ex rel. Scandrick v. McGee*, 67 Ohio St.2d 356, 359 (1981), quoting *Black's Law Dictionary* (5th Ed. 1979).  An unconscionable decision is one "showing no regard for conscience" or "affronting the sense of justice, decency, or reasonableness."  *Black's* (11th ed. 2019).  An unconscionable

decision also may be characterized as "[s]hockingly unjust or unfair."  *Id.*

**{¶31}** We additionally observe that arguments that the BTA might have decided to weigh the evidence differently "do not establish that the BTA abused its discretion."  *Hilliard City Schools Bd. of Education v. Franklin Cty. Bd. of Revision*, 2018-Ohio-4282, ¶ 14.  Rather, these arguments establish "only that the BTA might have exercised its discretion differently."  *Id.*

B

**{¶32}** The county auditor ordinarily values real property at its "true value in money."  R.C. 5713.01(B).  "'[T]he value or true value in money of real property'" refers to "'the amount for which that property would sell on the open market by a willing seller to a willing buyer . . . , i.e., the sales price.'"  (Ellipsis in original) *Terraza 8, L.L.C. v. Franklin Cty. Bd. of Revision*, 2017-Ohio-4415, ¶ 9, quoting *State ex rel. Park Invest. Co. v. Bd. of Tax Appeals*, 175 Ohio St. 410, 412 (1964); *accord Johnson v. Clark Cty. Bd. of Revision*, 2018-Ohio-4390, ¶ 10.  In assessing the true value of real property, if the property "has been the subject of an arm's length sale between a willing seller and a willing buyer within a reasonable length of time, . . . the auditor may consider the sale price .

. . to be the true value for taxation purposes." R.C. 5713.03

**{¶33}** In general, "'the best evidence of the "true value in money" of real property is an actual, recent sale of the property in an arm's-length transaction.'" *Terraza 8*, 2017-Ohio-4415, at ¶ 33, quoting *Conalco, Inc. v. Monroe Cty. Bd. of Revision*, 50 Ohio St.2d 129 (1977), paragraph one of the syllabus, quoting R.C. 5713.01; *accord Columbus City Schools Bd. of Education v. Franklin Cty. Bd. of Revision*, 2020-Ohio-353, ¶ 29. "[T]his 'best evidence' principle [i]s a rebuttable presumption that the sale price constitutes the value of the property." *Columbus City Schools*, 2020-Ohio-353, at ¶ 29, citing *Westerville City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 2018-Ohio-3855, ¶ 10-11.

**{¶34}** The true value of property is a "question of fact, the determination of which is primarily within the province of the taxing authorities," and accordingly, a reviewing court will not disturb the BTA's decision "'with respect to such valuation unless it affirmatively appears from the record that such decision is unreasonable or unlawful.'" *Akron City School Dist. Bd. of Edn. v. Summit Cty. Bd. of Revision*, 2014-Ohio-1588, ¶ 9, quoting *Cuyahoga Cty. Bd. of Revision v. Fodor,* 15 Ohio St.2d 52

(1968), syllabus.

{¶35} A party who appeals a BTA decision bears the burden to prove "its proposed value as the value of the property." *Colonial Village, Ltd. v. Washington Cty. Bd. of Revision*, 2009-Ohio-4975, ¶ 23. "To meet that burden, the challenging party "'must come forward and demonstrate that the value it advocates is a correct value.'" *Johnson v. Clark Cty. Bd. of Revision*, 2018-Ohio-4390, ¶ 15, quoting *EOP-BP Tower*, 2005-Ohio-3096, at ¶ 6. "[T]he appellant 'must present competent and probative evidence . . .; it is not entitled to a reduction . . . in valuation merely because no evidence is presented against its claim.'" *Westerville City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 2016-Ohio-1506, ¶ 28, quoting *Columbus City School Dist. Bd. of Edn. v. Franklin Cty. Bd. of Revision,* 90 Ohio St.3d 564, 566 (2001).

{¶36} In the case at bar, appellant does not dispute that, in July 2019, it purchased the property for a sale price of $2,350,000, or that the auditor valued the property at $2,216,130 for the tax year 2020. Instead, after the auditor assessed the value of the property for the tax year 2020, appellant sought a reduction in the true value of the property due to the COVID-19 pandemic.

C

{¶37} For the tax year 2020, prior law allowed an eligible person to request, in a valuation complaint, "that the assessment of true value in money of the property be determined as of October 1, 2020, instead of the tax lien date for that year."  2021 Sub.S.B. 57, Section 3(B).  This provision further stated that the request must reflect "a reduction in true value between those two dates due to a circumstance related to the COVID-19 pandemic or a state COVID-19 order."  *Id.* Additionally, the valuation complaint was required to "allege with particularity . . . how such a circumstance or order caused the reduction in true value of the property."  *Id.*

{¶38} Section 3(C) allowed a board of revision to adjust a property's "true value in money" to reflect a diminished valuation if it deemed the evidence of "diminished true value as of October 1, 2020, due to any circumstances related to the COVID-19 pandemic or state COVID-19 orders," "satisfactory."

{¶39} In the case sub judice, appellant argues that the BTA decision to assess the value of the property using the July 2019 sale was unreasonable and unlawful because appellant presented reliable and probative evidence that reflected a diminished true

value as of October 1, 2020, due to circumstances related to the COVID-19 pandemic or state COVID-19 orders. Appellant complains that the BTA did not give weight to the testimony offered at the BOR hearing, or to its appraiser's testimony and report presented at the BTA hearing. As indicated above, however, the credibility of the witnesses and the weight afforded to the evidence presented is a matter within the BTA's discretion, and an appellate court cannot disturb its findings unless appellant establishes that the BTA's attitude was unreasonable, arbitrary, or unconscionable. *See Johnson v. Clark Cty. Bd. of Revision*, 2018-Ohio-4390, ¶ 23 ("Under the owner-opinion rule, Johnson's opinion of the subject property's market value is competent evidence, but that opinion is not controlling because the BTA determines the credibility of witnesses who come before it"); *WJJK Invests., Inc. v. Licking Cty. Bd. of Revision*, 76 Ohio St.3d 29, 32 (1996) (the finder of fact need not accept the owner's value "as the true value of the property"). Appellant has not met this burden. Here, appellant has not pointed to anything in the record to suggest the BTA's attitude was unreasonable, arbitrary, or unconscionable.

**{¶40}** Moreover, the BTA "has the discretion to accept all, part, or none of the testimony of any appraiser." *Higbee Co. v.*

*Cuyahoga Cty. Bd. of Revision*, 2006-Ohio-2, ¶ 31. Thus, the BTA "is not required to adopt the appraisal methodology espoused by any expert or witness." *Hotel Statler v. Cuyahoga Cty. Bd. of Revision*, 79 Ohio St.3d 299, 303 (1997); *accord R.R.Z. Assoc. v. Cuyahoga Cty. Bd. of Revision*, 38 Ohio St.3d 198, 201 (1988) ("[t]he BTA need not adopt any expert's valuation"). Indeed, "the probative value of an appraiser's testimony lies within the competence of the BTA." *Meijer Stores L.P. v. Franklin Cty. Bd. of Revision*, 2009-Ohio-3479, ¶ 20. Consequently, reviewing courts generally will not "interfere with the BTA's discretion in assessing the[] details of [an] appraisal." *Harrah's Ohio Acquisition Co., L.L.C. v. Cuyahoga Cty. Bd. of Revision*, 2018-Ohio-4370, ¶25.

**{¶41}** In the case sub judice, even though appellant firmly believes that Snyder's appraisal is reliable and credible, the case law undeniably reveals that assessing the credibility and the probative value of Snyder's appraisal falls to the BTA, not to appellant or to this court. The BTA stated the reasons it chose not to credit Snyder's testimony, and nothing in the record shows an abuse of discretion.

**{¶42}** For example, one reason the BTA chose not to accept

Snyder's appraisal under the income capitalization approach was his use of a 25 percent risk factor due to COVID. Snyder indicated that he selected this risk factor after discussions with "market participants." As the BTA found, however, Snyder did not explain why this 25 percent risk factor was accurate. The record thus does not show that the BTA acted unreasonably, arbitrarily, or unconscionably by discrediting Snyder's report and opinion of value.[3] *See Westlake Med. Investors, L.P. v. Cuyahoga Cty. Bd. of Revision*, 74 Ohio St.3d 547, 549 (1996) (the BTA did not abuse its discretion by discrediting appraiser's "report and opinion of value" when the "BTA stated its reasons for why it did not believe [appraiser]'s testimony, and the record support[ed] its findings").

**{¶43}** Appellant nevertheless asserts that Snyder presented the same evidence that the BTA found probative and credible in *Kane Hospitality, LLC v. Butler Cty. Bd. of Revision*, BTA No. 2021-2225, 2023 WL 4623651 (July 13, 2023), and *Sterling*

---

[3] We observe that the BTA stated that Snyder testified that he believed that appellant overpaid for the property. In our review of the BTA hearing transcript, however, we did not locate a similar statement. Nevertheless, appellant has not challenged this particular finding. And even if it had, the record as a whole nonetheless shows that the BTA's decision is reasonable and lawful.

We also note that the BTA's findings regarding Snyder's testimony largely mirror its findings in a decision issued 12 days before the decision at issue in the case at bar. *See Heta Re L.P., v. Cuyahoga Cty. Bd. of Revision*, BTA No. 2022-331, 2024 WL 3447304, at *2-3 (July 12, 2024).

*Hospitality, LLC v. Butler Cty. Bd. of Revision*, BTA No. 2021-2226, 2023 WL 4623652 (July 13, 2023).  In *Kane Hospitality* and *Sterling Hospitality*, however, the BTA stated that the appraiser's "room and capitalization rate calculations were within the market range."  *Kane Hospitality* at *4; *Sterling Hospitality* at *3.  Furthermore, the appraiser in those two cases did not use a risk factor.  *See Kane Hospitality* at *2 (the appraiser "surveyed the market and determined a capitalization rate of 8%, to which he added a tax additur of 2.35%."); *Sterling Hospitality* at *2 (the appraiser "surveyed the market and determined a capitalization rate of 8.25%, to which he added a tax additur of 2.35%.").  In the case at bar, by contrast, the BTA did not state that Snyder's capitalization rate was within the market range.  Rather, the BTA questioned Snyder's use of a 25 percent risk factor.

**{¶44}** Moreover, we do not agree with appellant's argument that the BTA considered only the recency of the sale and did not evaluate other factors.  The BTA did evaluate appellant's evidence, but it did not find the evidence to be credible.  Thus, in the absence of credible evidence to establish a diminished value, the BTA applied the presumption that a recent

sale is the best evidence of a property's true value. *See Terraza 8*, 2017-Ohio-4415, at ¶ 33. In sum, "[t]he BTA performed an independent valuation based on the evidence in the record, and we defer to the factual conclusion that it reached." *Soin v. Greene Cty. Bd. of Revision*, 2006-Ohio-4708, ¶ 11.

**{¶45}** Finally, we are not unsympathetic to appellant's position. As the BTA recognized in a recent case,

> the pandemic presented unique challenges to . . . appraisers in determining COVID's impacts and may, as a practical matter, have increased the level of difficulty they faced in reaching value conclusions. However, those challenges do not diminish or change the burden of proof or the type or quality of evidence required to meet that burden.

*Copley-Fairlawn City Schools Bd. of Edn. v. Summit County Bd. of Revision*, BTA No. 2021-2495, 2025 WL 1287721 (Apr. 28, 2025).

**{¶46}** Accordingly, although COVID undoubtedly presented multiple challenges, appellant still bore the burden to produce reliable and credible evidence to support its claimed reduction. Even if this court may have reached a different decision, we cannot simply substitute our judgment for that of the BTA. *See Health Care REIT*, 2014-Ohio-2574, at ¶ 53. The BTA determined that appellant did not produce reliable and credible evidence to support its claimed reduction, and we find nothing unreasonable or unlawful with its decision.

D

**{¶47}** Appellant next asserts that the BTA decision is unreasonable or unlawful because it did not apply the same standard that it had applied in three other COVID-19 valuation complaints involving hotels: *Sterling Hospitality*; *Kane Hospitality*; and *Michael's, Inc. v. Lake Cty. Bd. of Revision*, BTA No. 2022-14, 2023 WL 2637514 (Mar. 20, 2023). Appellant states that the BTA required it to prove two values–one value dated January 1, 2020, and another value dated October 1, 2020. Appellant contends that, in the three other "BTA COVID hotel cases," the BTA "only required the Property Owners to find, 'a different value as of October 1, 2020.'"

**{¶48}** We observe that "an intentional and arbitrary application of different standards in different cases would raise the question whether the BTA had abused its discretion." *Olmsted Falls Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, 2009-Ohio-2461, ¶ 25, fn. 3. In the case sub judice, however, the record does not show that the BTA intentionally and arbitrarily applied a different standard in appellant's case. The BTA stated that it must determine whether "the appraisal accurately shows a decrease in value between January 1 and

October 1, 2020." In *Kane Hospitality*, *Sterling Hospitality*, and *Michael's*, the BTA stated that the owners had the "burden to present competent and probative evidence of a different value as of October 1, 2020, consistent with Ohio Senate Bill 57." *Kane Hospitality* at *3; *Sterling Hospitality* at *3; *Michael's, Inc.* at *2. Even though these three decisions do not contain the exact language that the BTA used in appellant's case, the meaning of the two standards is the same. For a value to be "different," it necessarily requires a comparison with another value. In *Kane Hospitality*, *Sterling Hospitality*, and *Michael's*, the BTA noted that the properties had been assessed, as of January 1, 2020, at $9,375,860 and $10,855,170, and $8,500,000 respectively. In none of those cases did the BTA state that the owners could prove a reduction in value simply by pointing to one value.

{¶49} Moreover, the record does not support appellant's claim that the BTA required appellant to bring forth two appraisals—one dated January 1, 2020, and one dated October 1, 2020. Instead, as it did in *Kane Hospitality*, *Sterling Hospitality*, and *Michael's, Inc.*, the BTA recognized that the auditor assessed the property's value at $2,216,130 as of January 1, 2020, but it ultimately determined that the July 2019

sale price was the best evidence of the property's true value.

{¶50} We also observe that the BTA has expressly rejected the argument that "S.B. 57 required owners to prove the diminution by essentially producing two appraisals: one for January 1, 2020, and one for October 1, 2020." *Columbus City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, BTA No. 2021-2848, 2024 WL 1299249, *3 (Mar. 22, 2024). Instead, "tailored evidence of diminution in value during the relevant period is sufficient even without a full appraisal with an opinion of value as of January 1, 2020." *Id.*

{¶51} The BTA's decision also is consistent with the language of S.B. 57, i.e., "a reduction in true value between" January 1, 2020, and October 1, 2020. *See* S.B. 57, Section 3(B). We further observe that, in other cases, the BTA used language similar to the language contained in the decision at issue in this appeal. *See L & L Realty Holding Company*, *LLC v. Belmont County Board of Revision*, BTA No. 2021-2565, 2025 WL 747001 (Feb. 25, 2025); *Columbus City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, BTA No. No. 2021-2848, 2024 WL 1299249, *2 (Mar. 22, 2024) (the BTA "must determine if [the] appraisal accurately shows a decrease in value between January

1, 2020 and October 1, 2020"). In *L & L Realty*, the BTA stated, "To prevail under the COVID complaint framework, the property owner must show (1) a "reduction in true value between" January 1, 2020, and October 1, 2020, and (2) the reduction was caused by "circumstance[s] related to the COVID-19 pandemic or a state COVID-19 order." *Id.* at *2, citing S.B. 57, Section 3.

**{¶52}** We therefore do not find any merit to appellant's argument that the BTA imposed a higher or different burden of proof when evaluating whether appellant had established a reduction in the true value of its property.

**{¶53}** Accordingly, based upon the foregoing reasons, we overrule appellant's assignments of error and conclude that the BTA's decision is reasonable and lawful. Thus, we hereby affirm the decision.

DECISION AFFIRMED.

JUDGMENT ENTRY

It is ordered that the decision be affirmed and that appellee recover of appellant the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Ohio Board of Tax Appeals to carry this judgment into execution.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Hess, J. & Wilkin, J.: Concur in Judgment & Opinion

For the Court

BY:_____

Peter B. Abele, Judge

NOTICE TO COUNSEL

Pursuant to Local Rule No. 14, this document constitutes a

final judgment entry and the time period for further appeal commences from the date of filing with the clerk.